## THE FIRST NATIONAL BANK OF CANTON v. KARAS.

*Banks and banking — Payment to wrong person — Stolen passbook — Evidence — Signatures of foreign depositors — Demand of indemnity before payment — Savings and general depositors distinguished — Exercise of care — Question for jury — Review.*

1. In an action by a depositor for recovery of money wrongfully paid to another person out of the depositor's account in the savings department of a bank, testimony to the effect that the signatures of foreign depositors often show a variance does not establish a standard of comparison by which the rights of the plaintiff depositor are to be determined, nor does observance as to variance in the signatures of other foreign depositors relieve the bank from liability for its mistake in paying out the plaintiff's money on a forged signature made by one who had stolen depositor's passbook, and the issue is therefore limited to the genuineness of the signature upon which the payment in question is made.

2. A tender of indemnity by the depositor to the bank against liability on account of payment to him of what remains of his deposit can not be demanded.

3. The relation between a bank and a depositor in its savings department differs only from the relation of a general depositor in that presentation is required of the depositor of his passbook when payment is demanded; and where payment was made by the bank to an unidentified stranger a question of the exercise of good faith and proper care on the part of the bank is one for the jury under proper instructions by the court; and the jury having found in favor of the depositor their verdict will not be set aside on account of a conflict of testimony, including that of experts offered by the bank to the effect that the money was paid out on the genuine signature of the depositor.

(Decided November 3, 1920.)

ERROR: Court of Appeals for Stark county.

*Messrs. Lynch, Day, Fimple & Lynch,* for plaintiff in error.

*Mr. G. C. Hafley* and *Mr. C. F. McConnell,* for defendant in error.

SHIELDS, J. Suit was brought in the court below by the defendant in error, as plaintiff, to recover of the plaintiff in error, as defendant, the sum of $1,060, which sum plaintiff alleges, after alleging that the defendant bank is a corporation under the national banking laws of the United States, at Canton, Ohio, was deposited with the defendant bank August 17, 1918, on a savings account, by the terms of which the bank agreed in writing to pay to the defendant a stipulated rate of interest, to be drawn as the plaintiff desired; that said bank issued to the plaintiff on said day a passbook containing said account, which passbook on May 7, 1919, was stolen from the plaintiff, and that on May 8, 1919, he duly notified said bank thereof; and that the plaintiff has performed all the terms and conditions of said agreement on his part, and, although demanded, said bank has refused and still refuses to pay said sum, with interest, to the plaintiff. Judgment is prayed for accordingly.

In its answer the defendant bank, for a first defense, admits that the plaintiff deposited with it the aggregate sum of $1,066.59, but avers that on May 7, 1919, it paid the plaintiff $1,000 of said sum.

For a second defense, it alleges that on the day of the opening of said savings account the plaintiff accepted a certain passbook and signed a signature card and thereby agreed to the written rules and regulations contained in said passbook; that on March 15, 1919, there was due the plaintiff on said

savings account a total credit of $1,066.59; that on May 7, 1919, a person representing himself to be and whom the defendant believed to be the plaintiff presented himself at the savings department of the defendant's bank, stating that he desired to withdraw the sum of $1,000 from said account, and duly presented said passbook and gave a receipt in writing in plaintiff's name for said sum, whereupon the defendant (no notice having been given to it prior thereto that said plaintiff's passbook had been stolen or lost) paid to said person said sum of $1,000. Defendant further avers that it was entitled by virtue of said rules, and in consequence of plaintiff's failure to notify the defendant of the loss of said passbook (if it had in fact been lost or stolen), to make payment as aforesaid, and that if the plaintiff sustained any loss, which the defendant denies, the defendant is not responsible therefor.

For reply to the first defense in defendant's answer the plaintiff denies that on May 7, 1919, or at any other time, the defendant bank paid him $1,000 on said account, and except that he accepted the passbook and agreed to the written rules and regulations therein, and deposited the several sums therein stated, he denies each and every allegation in said bank's second defense.

Under the foregoing issues a verdict and judgment were rendered in favor of the plaintiff and it is sought to reverse that judgment by proper proceedings in this court.

Several grounds of error are alleged in the petition in error, the first and second grounds being to

the rulings of the trial court in admitting and rejecting testimony offered during the trial. Upon a reading of the bill of exceptions we are unable to find any exceptions taken and preserved upon the record to the admission of testimony over the objection of the defendant except the following appearing in the re-examination of Martin Kolp, a witness for the plaintiff.

"Q. Mr. Kolp, I hand you defendant's Exhibit 1 and Exhibit 5, which is the withdrawal slip, and ask you to tell the jury whether or not there is any more variation in these two signatures than there generally is among foreigners' signatures?"

Plaintiff objects. Objection sustained. Defendant excepts.

"MR. LYNCH. We expect the witness to answer that there was no more variance between the signature card signed by Tom Karas in August, 1918, and the withdrawal slip signed by the person who withdrew the thousand dollars than is found generally and ordinarily in the usual transaction of business at the savings department of the First National Bank among the foreigners who are depositors of that bank in that department."

It is unnecessary to add that what may have been observed in the business transactions at this bank with reference to the variance of signatures of foreigners does not create or establish a standard of comparison by which the rights of this depositor were to be determined, nor would what is claimed to have been observed as a custom among other foreigners affect the status of this depositor. The question at issue was, Was the signature on the

withdrawal slip the genuine signature of Tom Karas? We think the action of the court in sustaining the objection to the question was proper and affords no ground of reversible error.

Under specification of error, No. 3, it was argued that the court below erred in its general charge to the jury, especially with reference to the right of the defendant in error to recover the balance of $66.59 standing to his credit after the payment of $1,000 on May 7, 1919, and interest thereon, "in the event that the jury found that the passbook of the defendant in error had been stolen, without giving or offering to the bank any indemnity against a subsequent claim being asserted or enforced against the bank for the same identical sum, and notwithstanding the evidence submitted failed to show that any demand had been made upon the bank by the defendant in error for the payment of said specific sum." As we read the record, a demand was made of the plaintiff in error for the payment of the full amount of the deposit made with it by the defendant in error, on the morning following the day of the theft of said passbook; also on the occasion of a call made by him upon the bank officers in company with one of his counsel. As to any indemnity being offered or given to the bank by the defendant in error to protect it against any subsequent claim being made for the same money, it appears that no demand was made by the bank of the defendant in error for such indemnity, nor was any offer made by the bank to pay over the money to the defendant in error, and there having been no such offer, nor anything said upon the subject, it appears that affirmative

action in this respect upon the part of the defendant in error was not called for. But if anything is lacking to support the view indicated, we think the case falls within the principle laid down in the case of *Citizens' Natl. Bank* v. *Brown,* 45 Ohio St., 39, and cases therein cited, wherein it is held that a tender of indemnity against future liability in a case of the character of the one under consideration is not necessary.

The next and perhaps the main grounds of error were that the verdict was not sustained by the evidence and was contrary to the clear and manifest weight thereof, and that the judgment is contrary to law. The law of the case having been correctly given to the jury under the rule laid down in *Hough Ave. Savings & Banking Co.* v. *Anderson,* 78 Ohio St., 341, and it appearing that there was no substantial disagreement between the parties as to the essential facts, the outcome of the case as it appears from this record hinged upon the question as to the good faith and reasonable care exercised by the bank in allowing the withdrawal of the sum of $1,000 on May 7, 1919, which sum, as the defendant in error claims, was paid by the bank to some unknown person without his knowledge or authority. That the rules and regulations of the bank as printed in the passbook became a part of the agreement between the bank and the depositor, when accepted by the latter, admits of no discussion, but as said by the judge, speaking for the court, at page 344, in the case above cited:

"The bank is bound to exercise good faith and reasonable care in making payment so that payment shall be made to the person entitled to receive

payment; and this is so because public policy will not allow the bank to so strip itself of responsibility by contract as to enable it to safely pay, intentionally or heedlessly, to one who has come into possession of the passbook fraudulently or criminally."

Here it appears that the passbook of the defendant in error was stolen from his suitcase while he was absent, engaged in his daily occupation, and presented to the bank, presumably by the person stealing it, and the assistant bank teller, supposing and believing such person so presenting the passbook to be its rightful owner, and who represented himself to be Tom Karas, the person named therein, upon his application, after comparing the signature of such person made on the withdrawal slip with the signature of the depositor on the original signature card, signed by the depositor at the time of opening his account with the savings department of said bank, and believing them to be identical, paid to such person the sum of $1,000 and entered the same in said passbook May 7, 1919. It further appears that on the morning of May 8, 1919, shortly after said bank opened for business, the defendant in error presented himself at the bank and made known to the managing agent of the savings department of the bank that his passbook had been stolen the day before and that he desired another book. Upon an examination of certain bank books, his attention was called to the fact that $1,000 had been drawn on his account the day previous, and that such payment had been made through the assistant teller, who after testifying in chief to the facts as hereinbefore stated, on cross-examination testified as follows:

"Q. This man that you paid the money to and who signed that withdrawal slip, he was alone, was he?

"A. Yes, sir.

"Q. And you didn't know him personally?

"A. No, sir.

"Q. Did you remember seeing him before?

"A. No, sir.

"Q. You have paid out money on different savings accounts to different people while you have been there in the bank?

"A. Yes, sir.

"Q. Did you ever ask anybody to get somebody to identify them?

"A. I have.

"Q. You didn't in this case though?

"A. No, sir.

"Re-Cross Examination.

"Q. The fact that this man came to you and said he wanted this thousand dollars and not knowing the man at all, you didn't think it was necessary, because of the signature, that he should identify himself?

"A. I did not."

In *First Natl. Bank of Belmont* v. *First Natl. Bank of Barnesville,* 58 Ohio St., 207, it is held:

"The general rule that the drawee of a check, draft, or bill of exchange, is held to know the signature of the drawer, and makes payment at his own peril has not been modified in this state, except by local custom as held in *Ellis and Morton* v. *Ohio Life Insurance and Trust Company,* 4 Ohio St., 628."

This is the undoubted rule under commercial accounts, but it is claimed that the rule is different where there is a contract between the depositor and the bank, the one relation being that of guarantor and the other one of contract. While this relation may determine the method of payment, in respect to the presentation of one's passbook, when payment is made on the account therein, we fail to see where it changes the rule in respect to the authenticity of a signature to an order of withdrawal or a check drawn on an account. Here it appears in the testimony of the assistant-teller that the $1,000 was paid to an unidentified stranger. Under this admitted condition of things, did the bank "exercise good faith and reasonable care in making payment so that payment shall be to the person entitled to receive payment?"

The bank further claimed through witnesses who claim to be experts in the matter of handwriting, because of their long experience and training in analyzing signatures to bank and other papers, that the signature on the withdrawal slip and the admitted genuine signatures on the several exhibits shown are signatures made by the same person. Without commenting on the value of this class of testimony it will be sufficient to say that the testimony of these witnesses, who are all known to be reputable and high-class business men, who are accustomed to compare disputed signatures with admitted genuine signatures, was submitted to the jury with all the other testimony offered and introduced upon the trial of the case, under proper instructions by the trial court. The question presented was one of fact for the determination of the

jury. These witnesses were before the jury, and of their credibility and the weight to be given to their testimony it was the peculiar province of the jury to determine. Commenting on the conflict of evidence in a case tried to a jury it is held in *Breese* v. *State,* 12 Ohio St., 146, that:

"A judgment will not be reversed because the verdict is contrary to the evidence, unless it is manifestly so, and the reviewing court will always hesitate to do so where the doubts of its propriety arise out of a conflict in oral testimony."

Upon the application of the rule of law here stated, and in view of the record here presented, we find no authority justifying us as a reviewing court to interfere with the judgment of the court below. The judgment of the court below will therefore be affirmed.

*Judgment affirmed.*

HOUCK and PATTERSON, JJ., concur.