PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-3288

_____

UNITED STATES OF AMERICA

v.

MARK ZABIELSKI,
                              Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 10-cr-00044-001)
District Judge:  Honorable Nora B. Fischer

_____

Argued October 24, 2012
Before:  HARDIMAN, GREENAWAY, JR.
and VANASKIE, *Circuit Judges*.

(Filed: April 3, 2013)

Laura S. Irwin **[Argued]**
Rebecca R. Haywood
Barbara K. Swartz
Office of United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219
        *Attorneys for Appellee*

Renee Pietropaolo **[Argued]**
Linda E. J. Cohn
1001 Liberty Avenue
1500 Liberty Center
Pittsburgh, PA 15222
        *Attorneys for Appellant*

---

OPINION OF THE COURT

---

HARDIMAN, *Circuit Judge*.

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the United States Sentencing Guidelines could not constitutionally be applied as diktats. Rather than scrap the Guidelines entirely, the Court left them intact as advisory and trial judges may vary from them, within reason, after applying the relevant provisions of 18 U.S.C. § 3553(a). Before doing so, it is important that trial judges accurately calculate the Guidelines range and correctly rule on departure motions. Failure to accomplish either of these tasks typically will cause us to vacate and remand for

2

resentencing. In some cases, however, the procedural error committed by the sentencing court is so insignificant or immaterial that prudence dictates that we hold such error harmless. Because we view this appeal as one of those cases, we will affirm Appellant Mark Zabielski's judgment of sentence.

I

On December 9, 2009, Zabielski robbed his hometown PNC Bank in West Newton, Pennsylvania. In an effort to disguise his appearance, he wore clothes that belonged to his stepfather and altered his visage. Footage from PNC's security tapes demonstrates that Zabielski entered the bank calmly and did "not appear to be confused, disoriented, or otherwise mentally adrift." App. 140–41.

Zabielski approached the teller and handed her a note that read: "$10,000." The teller, confused by the note, asked Zabielski if he wanted to withdraw the funds from his checking or savings account. He replied: "You don't understand. I need the money now. You have two minutes." PSR ¶ 4; App. 142.

Looking down, the teller noticed a bulge in Zabielski's jacket pocket, which gave her the impression that Zabielski might have been carrying a gun or a knife. The teller took $4,767 in cash from her drawer, along with some bait money, but she decided not to give the bait money to Zabielski for fear of what he might do if he discovered it.

Zabielski later told several people about the robbery, including his mother, who convinced him to return the money. He mailed $3,790 to the bank from a separate town,

3

in a package addressed both to and from the bank he robbed, after first cleaning the money with alcohol.

Images from the bank security cameras were provided to the local media, and Zabielski was quickly identified as the culprit. When authorities interviewed Zabielski on December 11, 2009, he denied having committed the robbery and lied about where he had been at the time of the crime. A grand jury in the Western District of Pennsylvania indicted Zabielski on one count of bank robbery in violation of 18 U.S.C. § 2113(a) on March 16, 2010, and he pleaded guilty a year later.

The Presentence Investigation Report (PSR) prepared by the United States Probation Office assigned Zabielski a total offense level of 21, which included a two-level enhancement for making a threat of death during the commission of the robbery pursuant to § 2B3.1(b)(2)(F) of the Guidelines. With an offense level of 21 and a criminal history category of I, Zabielski's advisory Guidelines range was 37 to 46 months' imprisonment. Zabielski objected to the two-level enhancement, arguing that he had not made a threat of death. According to Zabielski, his correct offense level was 19, which would have yielded an advisory Guidelines range of 30 to 37 months' imprisonment. The District Court determined that the threat of death enhancement was appropriate in the circumstances of the case.

Zabielski also requested a downward variance. He argued that he suffered from bipolar disorder and had resumed treatment since the robbery, but claimed he would

4

not receive effective treatment in prison.[1] During the sentencing hearing, Zabielski provided the District Court with a psychological evaluation and letters from friends and family describing his mental illness, his behavior when he was not taking medication, and the improvement in his behavior when he was managing his illness correctly. Zabielski also introduced a statement regarding bipolar disorder from the National Institute of Mental Health and testimony suggesting that, based on the many individuals with mental illness at Federal Bureau of Prisons (BOP) facilities and the BOP's limited mental health resources, he might not receive the treatment he needed in prison.

The Government argued that Zabielski should receive a within-Guidelines sentence of 37 to 46 months' imprisonment. It disputed Zabielski's claim that he would not be able to receive proper treatment in prison. It also presented evidence demonstrating that Zabielski had previously engaged in criminal conduct. FBI Agent Michael Nealon testified that he interviewed one of Zabielski's ex-girlfriends during the investigation, and that she claimed Zabielski had tried to kick her down the stairs. Another ex-girlfriend also had filed assault charges against Zabielski, but those charges were *nol prossed* upon Zabielski's completion of a domestic abuse counseling program. Agent Nealon learned from a third ex-girlfriend that Zabielski had likely broken into a house and stolen items, a claim that was supported by pawn shop tickets for the stolen items bearing

---

[1] Zabielski moved for downward departures based on similar grounds. He does not challenge on appeal the District Court's denial of those motions, except to request reconsideration in the event of remand.

5

Zabielski's name and driver's license number. One of Zabielski's ex-girlfriends also told Agent Nealon that Zabielski had pawned his stepfather's firearms. Pawn shop tickets supported this claim, as well.

After hearing arguments from both sides, the District Court conducted a thorough examination of the 18 U.S.C. § 3553(a) factors. It considered Zabielski's prior criminal conduct, his lack of respect for his community, the serious nature of his crime, the need to deter Zabielski and others from future criminal conduct, and the need to protect the public from further crimes that he might commit. The District Court acknowledged that Zabielski had a history of mental illness, but found that it did not justify a downward variance. The sentencing judge also expressed concern that Zabielski was unable to "keep [himself] sober and on [his] medications." App. 306. She remarked: "You say that you quit drugs, and I applaud you for that, but I think that the drugs in the past may have had some impact on your current diagnosis." App. 309–10.

The District Court also explained that, contrary to Zabielski's suggestion, he would receive adequate treatment in a BOP facility:

> [T]he BOP, in my estimation, can treat your bipolar disorder. They can treat your diabetes. They do have the medications available to you. . . . You have a history of depression, anxiety, and panic disorders as well. I think those can be addressed at the BOP. And in my estimation, the BOP generally goes beyond community standards for mental health. So, I think whatever you're going to get in a facility

is better than you could get in West Newton, especially if you're not working full-time, and if you don't have [an insurance] card, and you don't have the money, because you're not working to pay for the medications.

App. 309–10.

Consistent with its review of the § 3553(a) factors, the District Court denied Zabielski's request for a downward variance. After hearing Zabielski's allocution, however, the District Court changed course. Finding that Zabielski was sincerely remorseful, the District Court sentenced him to 24 months' incarceration, a downward variance of thirteen months below the bottom of his Guidelines range and six months below the bottom of the range he requested. In spite of this lenient sentence, Zabielski appealed.

## II[2]

Although Zabielski raises a congeries of arguments, the crux of his appeal is that the District Court committed procedural error when it applied a two-level threat of death enhancement. Because we hold that any error by the District Court was harmless, we will affirm Zabielski's judgment of sentence.

---

[2] The District Court exercised jurisdiction under 18 U.S.C. § 3231. Because Zabielski appeals a final judgment of conviction and sentence, we have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

A

In reviewing the District Court's sentence, we first consider whether the Court committed a significant procedural error, such as improperly calculating the Guidelines range. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc). We exercise plenary review over the District Court's interpretation and application of the Guidelines, *United States v. Figueroa*, 105 F.3d 874, 875–76 (3d Cir. 1997), we review determinations of fact for clear error, *United States v. Thomas*, 327 F.3d 253, 255 (3d Cir. 2003), and we "give due deference to the district court's application of the guidelines to the facts," *id.* (quoting 18 U.S.C. § 3742(e)). Even if we determine that the District Court committed procedural error, however, we may still uphold its sentence if the error was harmless. *See United States v. Flores*, 454 F.3d 149, 162 (3d Cir. 2006); *see also Puckett v. United States*, 556 U.S. 129, 141 (2009) (noting that procedural errors at sentencing are "routinely subject to harmlessness review").

Although all bank robberies involve some threat of harm, *see Thomas*, 327 F.3d at 257, § 2B3.1(b)(2)(F) of the Guidelines requires a two-level increase in offense level when the defendant's conduct and statements were so threatening that they amounted to a threat of death. This enhancement applies when the defendant has "engaged in conduct that would instill in a reasonable person, who is a victim of the offense, a fear of death." *Thomas*, 327 F.3d at 255 (quoting USSG § 2B3.1 app. n.6).

Before the Supreme Court decided *Booker*, we had occasion to review district court applications of the "threat of death" enhancement. *See, e.g.*, *Thomas*, 327 F.3d at 254;

8

*United States v. Day*, 272 F.3d 216, 217 (3d Cir. 2001); *Figueroa*, 105 F.3d at 875. Each time we affirmed the district court's decision to impose the enhancement. In most of the cases, the defendant had explicitly threatened death or clearly stated that he possessed a weapon, *see, e.g.*, *Day*, 272 F.3d at 217; *Figueroa*, 105 F.3d at 876–77, 880, but we also deferred to the district court's determination in more ambiguous circumstances. For example, in *Thomas*, the defendant handed the teller a note stating: "Do exactly what this says, fill the bag with $100s, $50s and $20s, a dye pack will bring me back for your ass, do it quick now." 327 F.3d at 254. We noted that whether the defendant's conduct actually amounted to a threat of death was "not free from doubt," but determined that the district court's application of the threat of death enhancement was not clear error. *Id*. at 257.

Zabielski's conduct less clearly amounts to a threat of death than any of the conduct we have previously considered—even in *Thomas*, where we expressed some uncertainty as to whether the enhancement was appropriate. Zabielski neither stated that he had a weapon nor explicitly threatened death; indeed, he did not explicitly threaten anything at all. He made a statement to the teller that could be taken as an implicit threat—"you have two minutes"—and he had a bulge in his pocket.

Now that the Guidelines are advisory, however, the District Court's imposition of the threat of death enhancement does not carry nearly the same significance it did before the Supreme Court decided *Booker*. In this appeal, Zabielski concedes that his initial Guidelines range was accurately calculated, and there is no real suggestion that the District Court misapprehended any of the relevant facts surrounding the threat. Zabielski challenges only the two-level increase,

which was dependent upon the District Court's understanding of, and appreciation for, the manner in which the bank robbery was committed. We must decide whether the two-level increase influenced the sentence imposed.

"[A] non-constitutional error is harmless when 'it is highly probable that the error did not prejudice' the defendant." *United States v. Langford*, 516 F.3d 205, 215 (3d Cir. 2008) (quoting *Gov't of Virgin Islands v. Toto*, 529 F.2d 278, 284 (3d Cir. 1976)). In the context of a Guidelines calculation error, this means that the record must demonstrate that there is a high probability "that the sentencing judge would have imposed the same sentence under a correct Guidelines range, that is, that the sentencing Guidelines range did not affect the sentence actually imposed." *Id*. at 216. Because "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process," *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007), it usually will be difficult for an appellate court to conclude with sufficient confidence that the same sentence would have been imposed absent a clear statement to that effect by the sentencing judge. *See Langford*, 516 F.3d at 212. An assumption that a district court would have imposed the same sentence regardless of the error would normally "place[] us in the zone of speculation and conjecture." *Id*. at 218 (quoting *United States v. Conlan*, 500 F.3d 1167, 1170 (10th Cir. 2007)).

In the typical case, an erroneous calculation of the defendant's base offense level or criminal history will not be harmless, particularly when the sentence imposed suggests that the district court chose to adhere to the advisory Guidelines range. In *United States v. Langford*, for example, the district court mistakenly assigned the defendant a criminal

10

history category of IV instead of III. *Id*. at 211. The district court sentenced Langford to 46 months' imprisonment, a sentence that fell within both the erroneously calculated Guidelines range (46 to 57 months) and the correct Guidelines range (37 to 46 months). *Id*. at 208, 210–11, 216–19. In holding that the error was not harmless, we noted that "where a court miscalculates a defendant's criminal history, its attempts to avoid disparity between defendants pursuant to § 3553(a)(6) will be misguided as it ineluctably will compare the defendant to others who have committed the same offense but are in a different criminal history category." *Id.* at 212–13. Furthermore, because the district court imposed a bottom-of-the-Guidelines sentence, it was reasonable to assume that, absent the error, the sentencing judge might have imposed a bottom-of-the-Guidelines sentence pursuant to the lower, correct range. *See id*. at 216 & n.3, 219. Thus, whether the erroneous Guidelines range affected Langford's sentence was unclear, and the court made no explicit clarifying statements. *See id*. at 218; *see also United States v. Smalley*, 517 F.3d 208, 211, 215–16 (3d Cir. 2008). As a result, we were unable to conclude that there was a high probability that the district court would have imposed the same sentence under both the erroneous and the applicable Guidelines ranges.

At the same time, we recognized that, "[i]n the rare case," it may be possible to discern from the record that the sentencing Guidelines range did not affect the actual sentence. *See Langford*, 516 F.3d at 218 (citing *Flores*, 454 F.3d at 162). The erroneous application of an enhancement—when it is clear from the record that the district court correctly apprehended both the facts underlying that enhancement and the significance of those facts—is more likely to be harmless

11

than the erroneous calculation of a defendant's initial Guidelines range. This is because the purpose of an enhancement is to train the district court's attention on the details of the crime. The threat of death enhancement at issue in this appeal, for example, required the court to consider the myriad types of threats that may occur in a robbery, and determine the appropriate level of punishment given the severity of the threat used by the defendant. Since *Booker*, what is most important is that the sentencing judge understands the facts of the case, grasps their significance, and incorporates them into a just sentence. To put it more colloquially, the mechanical application of "plus two points" or "minus two points" is far less significant now that the Guidelines are advisory.

In addition, an error is more likely to be harmless when it is clear from the record that the district court decided to vary from the advisory Guidelines range. For example, in *United States v. Flores*, the district court calculated an advisory Guidelines range of 70 to 87 months' imprisonment, but sentenced the defendant to 32 months' imprisonment based on the § 3553(a) factors—"a term 38 months (and more than 50 percent) below the bottom of the Court's calculated advisory Guidelines range." 454 F.3d at 162. On appeal, Flores argued that the court had made three errors in calculating his Guidelines range, including erroneously applying a two-level enhancement. *Id.* If the district court had made any one of the errors claimed by Flores, the sentence imposed still would have been below the applicable Guidelines range. If the district court had made all three errors, the sentence would have been within the applicable advisory Guidelines range of 27 to 33 months' imprisonment. *Id.* Given the district court's reliance on the § 3553(a) factors

12

and the substantial discrepancy between the sentence imposed and the calculated Guidelines range, we determined that there was a high probability that the district court would have imposed the same sentence regardless of the applicable advisory Guidelines range, and found that any error made in calculating the Guidelines range was harmless.[3] *Id.*

Here, the District Court's detailed findings of fact and explanation convince us there is a high probability that it would have imposed the same sentence irrespective of the threat of death enhancement. The District Court

---

[3] Other courts of appeals have determined that a Guidelines error can be harmless even when the district court did not explicitly state that it would have imposed the same sentence under either Guidelines range. *See, e.g.*, *United States v. Savillon-Matute*, 636 F.3d 119, 121–22, 124 (4th Cir. 2011) (finding that any error in application of an enhancement would have been harmless when defendant received a sentence slightly below the calculated Guidelines range but above the purportedly applicable Guidelines range because it was clear from the record as a whole that the court focused on the § 3553(a) factors); *United States v. Batista*, 684 F.3d 333, 339, 346–47 (2d Cir. 2012) (imposition of a four-level enhancement would have been harmless when court imposed a sentence that was significantly lower than the Guidelines range because of a downward departure for cooperation); *see also United States v. Coppola*, 671 F.3d 220, 251 n.28 (2d Cir. 2012) ("[J]ust as a single unambiguous statement can permit us to identify a Guidelines error as harmless in some circumstances, we can draw the same conclusion from a careful review of the totality of a sentencing record." (internal citation omitted)).

demonstrated its awareness of the details of the crime, including Zabielski's demeanor, his statements, and his physical appearance. Although the District Court found the threat of death enhancement applicable, it fully appreciated the context surrounding Zabielski's conduct. The Court then conducted a thorough analysis of the § 3553(a) factors. After hearing and considering Zabielski's allocution, the District Court exercised its discretion to give Zabielski a substantial break, sentencing him to 24 months' incarceration, which was 13 months below the calculated Guidelines range of 37 to 46 months. Even more poignant than *Flores*, here the sentence imposed also fell *below the range that would have been applicable without the enhancement* (30 to 37 months). The record does not suggest in any way that the 24-month sentence was influenced by either the Guidelines range established by the District Court or the range Zabielski requested; instead, the District Court chose "to disregard the Guidelines as too severe in such a way that we can be certain that the miscalculation had no effect on the sentence imposed." *Langford*, 516 F.3d at 218. Because the Court "clearly considered all the factors in 18 U.S.C. § 3553(a) in reaching its sentence and used its discretion in light of these factors, rather than in the application of a specific downward departure, to go below his advisory Guidelines range to identify the appropriate sentence," *Flores*, 454 F.3d at 162, any error regarding the threat of death enhancement was harmless.[4]

---

[4] Contrary to Zabielski's contention in his Rule 28(j) letter, our recent decision in *United States v. Castro*, 704 F.3d 125 (3d Cir. 2013), does not affect this analysis. In *Castro*, the defendant was convicted by a jury on one count of making

For the benefit of future cases, we emphasize that where, as here, the district court does not explicitly state that the enhancement had no effect on the sentence imposed, it usually will be difficult to ascertain that the error was harmless. An explicit statement that the district court would have imposed the same sentence under two different ranges can help to improve the clarity of the record, promote efficient sentencing, and obviate questionable appeals such as this one. As the Court of Appeals for the Eleventh Circuit has noted:

> [P]ointless reversals and unnecessary do-overs of sentence proceedings can be avoided if district courts faced with disputed guidelines issues state that the guidelines advice that results from decision of those issues does not matter to the sentence imposed after the § 3553(a) factors are considered. Likewise, if resolution of the guidelines issue does matter to the judge's ultimate sentencing decision, noting that it does will help focus our attention on the issues that matter.

---

a material false statement to federal agents and pleaded guilty to conspiracy. *Id.* at 129. On appeal, we vacated his conviction for making a false statement. Because this conviction had been used to increase the defendant's sentence for the conspiracy charge, we remanded the case so that the district court could reconsider the sentence. *Id.* at 142–44. Remand was necessary because the original sentence was based, in part, on a crime of conviction that was later deemed invalid. No such error occurred in Zabielski's case.

15

*United States v. Keene*, 470 F.3d 1347, 1349 (11th Cir. 2006) (quoting *United States v. Williams*, 431 F.3d 767, 773 (11th Cir. 2005) (Carnes, J., concurring)) (internal quotation marks and citations omitted).  Though probative of harmless error, these statements will not always suffice to show that an error in calculating the Guidelines range is harmless; indeed, a district court still must explain its reasons for imposing the sentence under either Guidelines range.  *See Smalley*, 517 F.3d at 214 (noting that if a departure or variance would be necessary to reach the actual sentence absent the Guidelines calculation error, the reasons for that departure or variance must be explained); *United States v. Wright*, 642 F.3d 148, 154 n.6 (3d Cir. 2011) (same).  But if the applicability of an enhancement is uncertain, and the enhancement has no bearing on the sentence imposed by the district court, a thorough explanation of the district court's reasoning can help us identify when an erroneous Guidelines calculation had no effect on the final sentencing determination so we can avoid "setting aside a perfectly reasonable sentence and sending the case back for more proceedings which probably will result in the same sentence being imposed again."  *Williams*, 431 F.3d at 774 (Carnes, J., concurring).

### III

In addition to his challenge to the application of the threat of death enhancement, Zabielski challenges the substantive reasonableness of his sentence.  Because none of his arguments comes close to satisfying our very deferential standard of review, *see Tomko*, 562 F.3d at 568, we discuss them only briefly.

As we noted already, the District Court thoroughly considered the relevant § 3553(a) factors, and provided

16

numerous reasons for sentencing Zabielski to 24 months in prison. It considered, among other things, Zabielski's background and past criminal activity, the seriousness of his crime, and the fact that he was "bold enough to commit this crime in his own backyard," which demonstrated a lack of respect for his community. App. 298–99. The District Court also considered the need to deter Zabielski and others from future criminal conduct and the need to protect the public from further crimes that Zabielski might commit. It then weighed those factors against the remorse Zabielski showed at the sentencing hearing, and determined that 24 months' imprisonment was appropriate.

Despite the Court's detailed discussion of the § 3553(a) factors, Zabielski argues that his sentence is too harsh because the District Court: (1) relied on unsubstantiated assumptions about bipolar disorder; (2) relied on unsubstantiated assumptions about his criminal background; and (3) sentenced him to imprisonment or increased the length of his sentence to facilitate rehabilitation. Zabielski has not shown that the District Court's speculation about the effects his substance abuse had on his bipolar disorder affected his sentence. And Zabielski's other two claims—that the District Court erred in relying on his bare arrest record and that it erred in sentencing him for a longer period to provide treatment or rehabilitation—lack any support in the record.

1

Zabielski argues that the District Court sentenced him based, in part, on unsupported assumptions about bipolar disorder, rendering his sentence unreasonable. He suggests

17

that his sentence would have been lower had the District Court not relied on the unsupported belief that his substance abuse and his unemployment were volitional, and that he was, to some degree, responsible for his own mental condition.

To the extent that the District Court considered Zabielski's history of substance abuse and unemployment in determining his sentence, it relied on assumptions supported by the record. Zabielski does not dispute that he used illicit drugs and, at the time of sentencing, he continued to drink alcohol and was unemployed.

The District Court did speculate that Zabielski may have exacerbated his mental illness by abusing drugs and alcohol. Zabielski claims that this speculation had no basis in any of the evidence presented, and argues that appellate courts have reversed judgments of sentence when they are based on unsupported assumptions about social science. *See United States v. Olhovsky*, 562 F.3d 530, 553 (3d Cir. 2009); *United States v. Dorvee*, 616 F.3d 174, 188 (2d Cir. 2010); *United States v. Miller*, 601 F.3d 734, 740 (7th Cir. 2010); *United States v. Bradley*, 628 F.3d 394, 401 (7th Cir. 2010).

The cases upon which Zabielski relies are inapposite. In each of those cases, the unsupported assumptions played a significant role in the sentencing determination. Moreover, those cases involved child pornography and sexual conduct with minors, and the sentencing judges' beliefs about recidivism, though not supported by evidence in the record, were central to the judges' reasoning. *See Olhovsky*, 562 F.3d at 547–50; *Dorvee*, 616 F.3d at 177–78; *Miller*, 601 F.3d at 739–40; *Bradley*, 628 F.3d at 399–401. Even then, the assumptions about recidivism did not, by themselves, render the defendants' sentences unreasonable. Instead, the courts

18

considered broadly whether the sentence imposed was reasonable, and the unsupported assumption played one part in that larger inquiry. *See, e.g.*, *Dorvee*, 616 F.3d at 184–86.

Here, by contrast, the District Court made several stray comments in the course of a detailed sentencing hearing, and Zabielski now attempts to imbue those statements with more significance than is warranted. Viewing the sentencing hearing as a whole and the resulting sentence, the District Court's comments about the causes of Zabielski's mental disorder do not render the sentence substantively unreasonable.

2

Zabielski also argues that the District Court improperly relied on his arrest record in determining his sentence. He correctly notes that "a bare arrest record—without more—does not justify an assumption that a defendant has committed other crimes." *United States v. Berry*, 553 F.3d 273, 284 (3d Cir. 2009). Nevertheless, a sentencing court may consider "[p]rior similar adult criminal conduct not resulting in a criminal conviction," USSG § 4A1.3(a)(2)(E), as long as that conduct has been proven by a preponderance of the evidence. *See Berry*, 553 F.3d at 281. Here, the District Court relied on more than Zabielski's "bare arrest record" in assessing his background—it relied on testimony from an investigating officer who described Zabielski's past criminal conduct. The District Court was entitled to consider that information at sentencing, even though the conduct did not result in a conviction.

3

Finally, Zabielski argues that the District Court might have imposed a longer term of incarceration to ensure that he

19

received the treatment he needed for his bipolar disorder. Under the Sentencing Reform Act, courts cannot impose or lengthen a prison term merely to promote an offender's rehabilitation. *Tapia v. United States*, 131 S. Ct. 2382, 2391 (2011); *United States v. Manzella*, 475 F.3d 152, 161 (3d Cir. 2007). This assuredly does not mean, however, that judges are prohibited from mentioning rehabilitation during the sentencing hearing. Courts may still, for example, "discuss[] the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs." *Tapia*, 131 S. Ct. at 2392.

The few statements of which Zabielski complains are taken out of context. During the sentencing hearing, the District Court noted:

> I've looked at the fact that you have an extensive mental health history. And one reason why I think that incarceration at this point in time is necessary is the fact that you don't seem to be able to live up to the conditions that you need to maintain in order to keep yourself sober and on your medications.

App. 306. This statement does not indicate that the District Court sentenced Zabielski to ensure that he received treatment. Zabielski argued throughout his sentencing hearing that his mental illness justified a lower sentence or probation. He claimed that he had begun to manage his illness better since the robbery and was less likely to commit additional crimes. The District Court, after considering Zabielski's past conduct, did not believe he was effectively managing his illness. This statement reflects an exchange between the defendant and the sentencing judge; it does not

20

show that the District Court imposed a longer sentence to ensure that Zabielski received the treatment that he needed. *Cf. Tapia*, 131 S. Ct. at 2385, 2393 (remand was appropriate when the district court explained that "one of the factors that affects [the length of the sentence] is the need to provide treatment. In other words, so she is in long enough to get the 500 Hour Drug Program, number one"); *Manzella*, 475 F.3d at 155, 162 (remand was appropriate when the district court listed, among other reasons for the sentence, the need to "provide the Defendant with needed and effective educational or vocational training, medical care, or other corrective treatment").

The District Court also stated:

> [T]he BOP, in my estimation, can treat your bipolar disorder. They can treat your diabetes. They do have the medications available to you. . . . You have a history of depression, anxiety, and panic disorders as well. I think those can be addressed at the BOP. And in my estimation, the BOP generally goes beyond community standards for mental health. So, I think whatever you're going to get in a facility is better than you could get in West Newton, especially if you're not working full time, and if you don't have [an insurance] card, and you don't have the money, because you're not working to pay for the medications.

App. 309–10. This statement is a response to the arguments raised by Zabielski in the course of his sentencing hearing. Zabielski argued that because of limited BOP resources, he may not be able to receive the treatment that he needs in

21

prison. The District Court disagreed, finding that BOP facilities were capable of accommodating his needs. This type of reference to rehabilitation is, under *Tapia*, both permitted and encouraged. *See* 131 S. Ct. at 2392.

## IV

For the reasons stated, we hold that the application of the threat of death enhancement was harmless error, and Zabielski's sentence was not substantively unreasonable. Accordingly, we will affirm the District Court's judgment of sentence.