**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1927
_____

UNITED STATES OF AMERICA

v.

VICTOR CORA-ALICEA, a/k/a Ocho,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 2-21-cr-00243-05)
District Judge: Honorable John Milton Younge
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 25, 2024

Before: RESTREPO, MATEY, and McKEE, *Circuit Judges*

(Filed: May 6, 2024)

Lisa Evans Lewis
Brett G. Sweitzer
FEDERAL COMMUNITY DEFENDER OFFICE

601 Walnut Street
The Curtis Center, Ste. 540 W
Philadelphia, PA 19106
        *Counsel for Appellant*

Jacqueline C. Romero
Robert A. Zauzmer
Jason D. Grenell
U.S. ATTORNEY'S OFFICE
615 Chestnut Street, Ste. 1250
Philadelphia, PA 19106
        *Counsel for Appellee*

———————

OPINION OF THE COURT

———————

RESTREPO, *Circuit Judge*.

People make poor choices. But our sentencing framework requires judges to balance these decisions against several factors, including any mitigating evidence, before determining an appropriate sanction. When a judge fails to do so on account of an erroneous legal conclusion, a procedural error exists that requires resentencing. Here, because Victor Cora-Alicea's sentencing judge mistakenly believed that nearly the entirety of his mitigation was accounted for by adjustments to his Guidelines range, we will vacate and remand for resentencing.

2

# I

## A. Mr. Cora-Alicea Bags Drugs in North Philadelphia

In September 2020, the FBI began investigating a man named Ramone Velazquez and his drug trafficking organization. Seeing as Mr. Velazquez once proclaimed, "Every day that God has made . . . I sell drugs," PSR ¶ 43, the investigation—consisting principally of controlled buys, wiretaps, visual surveillance, and searches—quickly revealed that his group operated out of at least four stash houses in North Philadelphia and controlled various corners and territories. It was from these sites that he and his employees processed and then sold fentanyl and cocaine to people in Philadelphia and Lancaster, Pennsylvania.

In the end, the government charged 17 men in the Velazquez operation, including Mr. Velazquez himself. Mr. Cora-Alicea was one of those individuals. Employed by the operation for some nine months, he was "by all accounts . . . a bagger with no supervisory responsibilities in the organization and was simply directed to sit at a table and bag all day long." App. 25 (Gov't Sentencing Mem.). As a result, the parties later agreed that he was deserving of a minor role adjustment pursuant to USSG §3B1.2(b). Arrested on June 24, 2021, he pleaded guilty without the benefit of an agreement on November 9, 2022 to violations of 21 U.S.C. §§ 846; 841(a)(1), (b)(1)(A) and (b)(1)(C); and 18 U.S.C. § 2.

## B. Mr. Cora-Alicea Receives a Sentence of 45 Months' Imprisonment

The parties did not dispute the calculation of Mr. Cora-Alicea's Guidelines range at his May 17, 2023 sentencing. A base offense level of 31, followed by reductions for his safety-valve eligibility (-2), minor role (-2), and acceptance of responsibility (-3), yielded a total offense level of 24. His criminal history category I was based on a nonexistent criminal record. The District Court therefore set his Guidelines range at 51–63 months.

The government took no specific position on where within that range Mr. Cora-Alicea should be sentenced, arguing only that no variance should be granted. Mr. Cora-Alicea, by contrast, requested a mitigation-based variance from the range pursuant to 18 U.S.C. § 3553(a). In his view, his life history and personal characteristics, coupled with an anticipated change to the Guidelines for people with zero criminal history points,[1] justified a variance to approximately 24 months' imprisonment (in other words, a time-served sentence). In support of this request, he provided evidence regarding his cognitive deficits and depression, mitigating motive, traumatic childhood, family ties, and employment prospects.

---

[1] That amendment to the Guidelines, No. 821, went into effect on November 1, 2023. *See* U.S. Sentencing Comm'n, *Amendment 821*, available at https://www.ussc.gov/guidelines/amendment/821.

In support of his request for a variance, the District Court heard testimony from Dr. Adriana Flores, a licensed clinical and forensic psychologist, who interviewed and evaluated Mr. Cora-Alicea. Dr. Flores administered psychological testing that revealed illiteracy ("[H]e is unable to read or write . . ." in either English or Spanish) and an IQ of 82, both suggesting low intellectual functioning ("[I]f you had a hundred individuals his age in the room, he would be at the bottom twelve").[2] App. 69, 71. Moreover, Dr. Flores diagnosed him, retrospectively, with clinical depression at the time of the offense (serious enough to include exhibiting suicidal ideation).

Dr. Flores also described what she called mitigation (*i.e.*, her "evaluation of how [he got] here, . . . the causal factors"). App. 71–72. His low intellectual ability was "a main contributing factor." App. 72. She specifically pointed to lowered coping abilities when under stress because of his diminished intellectual capacity. *Id.* ("[H]e's not going to be able to think of as many logical, rational solutions as somebody with an IQ of a hundred, which would be average."). That lower intellectual functioning also made him "more likely to be talked into doing something, that may not, necessarily, be in his best interests."[3] *Id.* In her view, and interrelatedly, his

---

[2] Mr. Cora-Alicea's intellectual limitations also raised concerns for Dr. Flores that he would be more vulnerable to harm while incarcerated.

[3] Dr. Flores suggested that it was even harder for Mr. Cora-Alicea to resist the series of bad decisions that landed him in custody because the person who approached him about working for Mr. Velazquez was a "close family member" who

depression (triggered by pandemic-induced unemployment and the stress it caused his low-income family, including a son with special needs) also played a role in his unexpected turn to crime.

In contextualizing Mr. Cora-Alicea's actions, Dr. Flores provided descriptions of the forms of childhood trauma he experienced. Specifically, she described him growing up in poverty in Puerto Rico without a father, and the intense bullying he experienced for his intellectual deficits, speech impediment, and for being dark-skinned. The District Court also heard from Mr. Cora-Alicea's mother-in-law, sister-in-law, and brother, and received assurances of his future employability. Taking all of this into consideration, Dr. Flores ultimately described Mr. Cora-Alicea's risk of recidivism as "really low." App. 75.

Finally, the District Court heard from Mr. Cora-Alicea himself, who made brief, tearful remarks:

> First, I would like to say, good morning and I'm sorry for wasting all your time. And this will never happen in my life again, it's the first time it happened.
>
> ([Mr. Cora-Alicea] is weeping.)
>
> I miss my family. And I honestly tell you, this will not happen again. I've learned my lesson

---

he "considered a brother." App. 73. That person had previously "protected him against some pretty severe bullying that he had experienced in childhood, because of his intellectual deficits." App. 74.

and my family has done so much for me. I am sorry.

App. 109.

The District Court, having heard from the parties and from Mr. Cora-Alicea himself, pronounced its sentence: 45 months on each count, to be served concurrently, followed by a total of three years on supervised release. This small variance took into consideration his zero-point status but ignored Mr. Cora-Alicea's other bases for a variance.

## C. Mr. Cora-Alicea Challenges His Sentence

Mr. Cora-Alicea timely appealed the District Court's judgment, arguing that the District Court procedurally erred at sentencing by 1) dismissing the majority of his personal mitigation evidence offered in support of a variance under 18 U.S.C. § 3553(a) on the ground that it was "already taken into account" by the downward adjustments under the Guidelines, App. 114, 2) dismissing Dr. Flores's opinion that he was depressed at the time of the offense on the ground that the same can be said about "every minority in the United States," App. 86, and 3) responding to his allocution by telling him that he should "[b]e the man [] you're supposed to be" and "stop sitting up here crying." App. 119. As the first issue is dispositive and was properly objected to, we will limit our analysis accordingly.[4]

---

[4] We will, however, remind all involved that these hearings are solemn occasions in which judges are tasked with crafting "individualized sentence[s]." *United States v. Ward*, 732 F.3d 175, 181 (3d Cir. 2013). Allocution, for its part, "is

**II[5]**

Federal sentencing involves a three-step process. District courts must first calculate the initial Guidelines range, then rule on any motions to depart from the initial range and state the final, departed-to range, and—finally—exercise discretion to choose a sentence within or outside the final range based on the sentencing factors in 18 U.S.C. § 3553(a). *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). Step-two deviations from the initial range ("departures") are based on specific Guidelines provisions, whereas step-three deviations from the final range ("variances") are based on the § 3553(a) sentencing factors. *Id.* at 247 n.10.

---

designed to temper punishment with mercy in appropriate cases, and to ensure that sentencing reflects individualized circumstances." *Id.* (quoting *United States v. De Alba Pagan*, 33 F.3d 125, 129 (1st Cir. 1994)). By definition, gross generalizations or stereotypes—whether they be about race or gender—do not produce individualized sentences. And they are inappropriate for several reasons, not the least of which is how they prejudge people rather than allowing them to speak for themselves.

[5] The District Court had subject-matter jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review criminal sentences for abuse of discretion. *United States v. Wise*, 515 F.3d 207, 217 (3d Cir. 2008). A district court abuses its discretion when it bases a sentence on an erroneous legal conclusion, the erroneousness of which we review de novo. *Id.* Where no objection has be made, plain error must be shown. Fed. R. Crim. P. 52(b).

"In order to satisfy step three, '[t]he record must disclose meaningful consideration of the relevant statutory factors and the exercise of independent judgment, based on a weighing of the relevant factors, in arriving at a final sentence.'" *United States v. Kluger*, 722 F.3d 549, 566 (3d Cir. 2013) (quoting *United States v. Grier*, 475 F.3d 556, 571–72 (3d Cir. 2007) (en banc)). In other words, step three requires "a true, considered exercise of discretion." *United States v. Friedman*, 658 F.3d 342, 359 (3d Cir. 2011) (quoting *United States v. Jackson*, 467 F.3d 834, 841 (3d Cir. 2006)). An exercise of discretion tainted by an erroneous legal conclusion—including a misinterpretation of the Guidelines— results in procedural error requiring resentencing unless the error is harmless. *See United States v. Wise*, 515 F.3d 207, 217 (3d Cir. 2008); *United States v. Zabielski*, 711 F.3d 381, 386 (3d Cir. 2013).

Things went awry in this case during step three. As described above, Mr. Cora-Alicea sought a variance to a below-Guidelines range sentence of time served. But the District Court erroneously concluded that all but one of his grounds for a variance (the unavailability of the two-level reduction for having zero criminal history points) had already been accounted for by the downward adjustments for safety-valve eligibility, minor role, and acceptance of responsibility applied in step one's Guidelines calculation.[6] This is incorrect as a matter of law.

---

[6] The District Court specifically noted the following at sentencing:

> As I look at the sentencing guidelines, the Probation officer and the guideline calculations

9

"The 'safety valve' provision of federal sentencing law exempts certain [individuals] from mandatory minimum penalties, thus enabling courts to give them lighter prison terms." *Pulsifer v. United States*, 144 S. Ct. 718, 723 (2024). In determining safety-valve eligibility, district courts evaluate an individual's lack of criminal history; lack of violence, death,

> have already taken into account, the fact that he was entitled to the safety valve, which took two levels off. He was given two levels off . . . [] as a minor participant. He was given another two levels off for his demonstrated acceptance of responsibility. He was given another one level off, because he assisted the authorities in the investigation and the prosecution of his own misconduct, which gave him a total offense level of twenty-four.
>
> The guidelines have already taken into account, where Mr. Cora-Alicea is, the fact that he is a good person, that's done something bad, that we'd shake our head and wonder why he did that, there is no answer to that. And even Mr. Cora-Alicea does not provide a good answer to that. [] The [] guideline calculations have already taken into account his character. * * * But, [defense counsel], everything that you've stated has already been taken into account . . . . * * * [E]verything that you've been indicating, [defense counsel], I've -- he's already been given the benefit of that.

App. 113–115.

or serious bodily injury in the offense; lack of aggravating role in the incident; and acceptance of responsibility for the crime. USSG §5C1.2(a)(1)–(5); 18 U.S.C. § 3553(f)(1)–(5). Meanwhile, the minor-role and acceptance-of-responsibility adjustments similarly consider a participant's role in the offense and their acceptance of responsibility for it. USSG §§ 3B1.2(b), 3E1.1. These adjustments have *nothing* to do with the myriad of mitigating circumstances raised by Mr. Cora-Alicea under § 3553(a). *See supra* I.B. And even if they had a connection of some sort, district courts must nevertheless demonstrate meaningful consideration of the mitigation evidence rather than summarily dismissing it as accounted for by the Guidelines. *See, e.g.*, *United States v. Begin*, 696 F.3d 405, 414 (3d Cir. 2012) (rote recitation of sentencing factors insufficient to demonstrate meaningful consideration of variance ground). This was not done here.

Accordingly, step three of Mr. Cora-Alicea's sentencing was tainted by the District Court's misinterpretation of the Guidelines. This erroneous legal conclusion, that Mr. Cora-Alicea's variance grounds are accounted for by the downward adjustments for safety-valve eligibility, minor role, and acceptance of responsibility, was prejudicial as it preempted any weighing of the mitigation evidence against the Guidelines range or the other sentencing factors—much less the degree of weighing we require to demonstrate "the exercise of independent judgment," *Grier*, 475 F.3d at 571–72, and "a true, considered exercise of discretion," *Friedman*, 658 F.3d at 359 (quoting *United States v. Jackson*, 467 F.3d 834, 841 (3d Cir. 2006)).

11

**III**

We will thus vacate Mr. Cora-Alicea's sentence and remand his case to the District Court for resentencing.[7] *See United States v. Mateo-Medina*, 845 F.3d 546, 550 (3d Cir. 2017) (acknowledging that we generally vacate a procedurally deficient sentence and remand for resentencing).

---

[7] Mr. Cora-Alicea has been on home confinement since March 12 of this year. Once his First Step Act credits are fully calculated, he is likely to complete his custodial sentence on May 23 (and perhaps sooner). Telephone conversation with Alison O'Neill, Residential Reentry Specialist, Fed. Bureau of Prisons (April 24, 2024). Considering this timeline, we urge the District Court to move expeditiously in resentencing him.