**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2594
_____

UNITED STATES OF AMERICA

v.

MARTINS INALEGWU, a/k/a Martins Friday Inalegwu,
Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 1:23-cr-00282-001)
District Judge: Honorable Christine P. O'Hearn
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 5, 2025

Before: HARDIMAN, BIBAS, and FISHER, *Circuit Judges*.

(Filed: July 16, 2025)
_____

OPINION[*]
_____

**FISHER**, *Circuit Judge*.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Martins Inalegwu participated in a widespread and complex financial fraud scheme. Once apprehended, he pled guilty to committing, and conspiring to commit, illegal money transmission[1] and income tax evasion.[2] Inalegwu and the Government agreed that his offense level was 28, with Inalegwu potentially being eligible for multiple reductions, including a two-level reduction as a zero-point offender.[3] However, the District Court declined to impose the reduction given the severity of the crime and sentenced Inalegwu to 80 months' imprisonment. On appeal, Inalegwu argues that we should vacate his sentence because the District Court erred in its Guidelines calculation and violated his right to allocution by cross-examining him during his sentencing allocution.[4] We, however, perceive no such errors and will affirm the sentence of the District Court.

First, Inalegwu argues that the District Court miscalculated his Guidelines range by denying the zero-point offender reduction. We review the District Court's interpretation of the Guidelines de novo, we review its factual findings for clear error, "and we 'give due deference to the district court's application of the [G]uidelines to the

---

[1] 18 U.S.C. §§ 1960, 2.
[2] 26 U.S.C. § 7201; 18 U.S.C. § 2.
[3] U.S.S.G. § 4C1.1.
[4] The District Court had subject matter jurisdiction under 18 U.S.C. § 3231 (federal crimes). We have appellate jurisdiction under both 18 U.S.C. § 3742(a) (review of a sentence) and 28 U.S.C. § 1291 (final decisions of district courts).

facts.'"[5] To be eligible for the zero-point offender reduction, Inalegwu must not have "personally cause[d] substantial financial hardship."[6] While the parties invite us to opine on the contours of personally causing financial hardship, we do not need to do so here: "[e]ven if we determine that the District Court committed procedural error," such as miscalculating the Guidelines range as Inalegwu argues, "we may still uphold its sentence if the error was harmless."[7]

Miscalculating the Guidelines is a non-constitutional error and "is harmless when 'it is highly probable that the error did not prejudice' the defendant."[8] If the record establishes "that there is a high probability 'that the sentencing judge would have imposed the same sentence under a correct Guidelines range,'" it is highly probable that the defendant was not prejudiced by the calculation error.[9] When discerning whether this high probability exists, we may consider whether the court made a clear statement of its intent to impose the same sentence even if the range were calculated differently, whether the sentence departed from the advisory range, and whether the court demonstrated awareness of the relevant facts and circumstances.[10]

---

[5] *United States v. Zabielski*, 711 F.3d 381, 386 (3d Cir. 2013) (quoting *United States v. Thomas*, 327 F.3d 253, 255 (3d Cir. 2003)).

[6] U.S.S.G. § 4C1.1(a)(6).

[7] *Zabielski*, 711 F.3d at 386.

[8] *United States v. Langford*, 516 F.3d 205, 215 (3d Cir. 2008) (citation omitted).

[9] *Zabielski*, 711 F.3d at 387 (quoting *Langford*, 516 F.3d at 216).

[10] *See id.* at 387–90 (noting it is sometimes discernible from the record that the choice between two possible Guidelines ranges "did not affect the actual sentence").

Here, the District Court heard argument on the zero-point offender adjustment and reviewed the parties' offered authority. It then made a "clear statement" that it "would have imposed the same sentence regardless of" which range applied.[11] When handing down Inalegwu's 80-month sentence, the sentencing court "want[ed] to specifically note [it] would have imposed this sentence, quite frankly, even if [it] had sustained the defendant's objections on the zero-point offender [reduction]."[12]

Still, Inalegwu argues that the District Court's failure to explain the alternative sentence establishes that he was harmed by the alleged miscalculation. While it is true that clear statements alone are probative but not dispositive of harmless error, the District Court "explain[ed] its reasons" for sentencing Inalegwu to 80 months' imprisonment "under either Guidelines range."[13] It stated that "the seriousness of the offense . . . warrants a severe and substantial penalty"[14] given its duration and the complexity and sophistication of Inalegwu's role in the scheme.[15]

Our conclusion that any alleged error was harmless is further supported by the fact that the District Court imposed a sentence well above the Guidelines range (57 to 71 months) and the range that would have applied with the adjustment (46 to 57 months). When the record shows a clear variance from the disputed Guidelines range and suggests

---

[11] *See id.* at 387.
[12] App. 152–53.
[13] *See Zabielski*, 711 F.3d at 389.
[14] App. 153.
[15] App. 149.

that the sentence was not influenced by that range, "we can be certain that" any alleged error "had no effect on the sentence imposed."[16]

Finally, the District Court's thorough analysis of the circumstances surrounding Inalegwu's offenses further supports our conclusion "that it would have imposed the same sentence" regardless of any error because sentencing enhancements and reductions are meant to "train the district court's attention on the details of the crime."[17] Here, the District Court extensively questioned Inalegwu, then deliberately imposed the 80-month sentence to reflect the complexity of the offense, including its enduring harm to the victims. The District Court also emphasized the need for "adequate general deterrence for this type of conduct."[18] Because the foregoing convinces us that any alleged procedural error in calculating Inalegwu's applicable Guidelines range was harmless, we decline to vacate his sentence.

Second, Inalegwu argues that the sentencing judge impermissibly cross-examined him during his allocution. Because he did not object to this questioning at the time of his sentencing, we review for plain error.[19] "For reversible plain error to exist," Inalegwu must establish "(1) an error; (2) that is plain; (3) that affects substantial rights; and

---

[16] *See Langford*, 516 F.3d at 218.

[17] *See Zabielski*, 711 F.3d at 387–88.

[18] App. 144.

[19] *United States v. Adams*, 252 F.3d 276, 284 (3d Cir. 2001); *see also* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the [District Court's] attention.").

5

(4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings."[20] We need not go further than the first prong, as there is no error.

The purpose of allocution "is not to permit the defendant to re-contest the factual issues of innocence and guilt. Rather, [it] is to afford the defendant an opportunity to raise mitigating circumstances and to present his individualized situation to the sentencing court."[21] In furtherance of this purpose, Federal Rule of Criminal Procedure 32 requires that, prior to imposing a sentence, a sentencing court must "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence."[22]

Inalegwu asserts that the District Court's questioning amounted to cross examination because it "grill[ed] him about other issues, including his relationship with his children and his knowledge about the source of the funds" and "repeated questions and pushed back against [his] responses."[23] But the District Court's questions simply engaged with the facts and "enable[d] the sentencing court to craft an individualized sentence."[24] After Inalegwu seemingly concluded his allocution, the Court inquired about Inalegwu's personal relationships specifically because Inalegwu requested house arrest to

---

[20] *See United States v. Tai*, 750 F.3d 309, 313–14 (3d Cir. 2014).
[21] *United States v. Moreno*, 809 F.3d 766, 778 (3d Cir. 2016) (quoting *United States v. Ward*, 732 F.3d 175, 182 (3d Cir. 2013)).
[22] Fed. R. Crim. P. 32(i)(4)(A)(ii).
[23] Appellant's Br. 40.
[24] *Ward*, 732 F.3d at 181.

limit the effect of his sentence on his children. Likewise, it inquired about the source of the funds because Inalegwu asserted that "[he] never knew full score of [his] mistake and the consequences [he] put [himself] and [his] family into."[25] At no point did the questions become adversarial like a cross-examination or go beyond a clarification of the relevant facts. Inalegwu received a full and fair opportunity to allocute; thus, there was no violation of his right to allocution.

      Because any error in calculating Inalegwu's sentencing range was harmless and the sentencing judge's questioning at allocution did not violate Inalegwu's due process rights, we will affirm his sentence.

---

[25] App. 126.