**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-1033
_____

UNITED STATES OF AMERICA,
                                        Appellant

v.

FRANCIS RAIA

_____

On Appeal from the United States District Court for the
District of New Jersey
District Court No. 2:18-cr-00657-001
District Judge:  The Honorable William J. Martini

_____

Argued January 7, 2021

Before: SMITH, *Chief Judge*, AMBRO and CHAGARES,
*Circuit Judges*

(Filed: April 6, 2021)

Mark E. Coyne
Steven G. Sanders            ARGUED
Office of United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102
    *Counsel for Appellant*

Jenny Chung
Lee Vartan                   ARGUED
Chiesa Shahinian & Giantomasi
One Boland Drive
West Orange, NJ 07052

David M. Dugan
Chiesa Shahinian & Giantomasi
11 Times Square
31st Floor
New York, NY 10036

Alan L. Zegas
Third Floor West
60 Morris Turnpike
Summit, NJ 07901
    *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

SMITH, *Chief Judge*.

A jury found Appellee Francis Raia guilty of conspiracy to bribe voters.  At sentencing, the District Court calculated Raia's total offense level under the Sentencing Guidelines to be 14, which with Raia's criminal history category yielded a Guidelines range of 15–21 months' imprisonment.  The Court then stated it would vary to offense level 8—zero to six months—and sentenced Raia to a three-month term of imprisonment.  The Government appeals the sentence claiming procedural error, arguing that the District Court miscalculated the Guidelines offense level by not applying two sentencing enhancements: a four-level aggravating role enhancement under U.S.S.G. § 3B1.1(a) and a two-level obstruction of justice enhancement under § 3C1.1.

Because the District Court erred in its interpretation of the Guidelines, we will vacate the sentence and remand for resentencing.  The Government requests that we remand with instructions that the District Court apply both the four-level aggravating role enhancement and the two-level obstruction of justice enhancement.  But because the record does not clearly support the application of either enhancement, we will leave it to the District Court to make whatever factual findings are necessary to determine whether either or both of the enhancements apply.

-3-

# I. FACTS AND PROCEDURAL HISTORY

## A. Indictment

In 2013, Raia ran for election to a city council seat in Hoboken, New Jersey. In that same election, Raia also supported—through a political action committee ("PAC") he chaired—a ballot referendum to weaken local rent control laws. Raia's campaign strategy was to solicit voters residing in the Hoboken Housing Authority to vote by mail. To that end, Raia's PAC cut $50 checks to hundreds of these voters. Raia claimed that the voters who received the $50 did so in exchange for get-out-the-vote work they did for Raia's campaign, such as wearing campaign-branded t-shirts and handing out campaign literature. Raia lost the election.

An investigation supported a different reason for Raia's campaign's vote-by-mail strategy and his PAC's use of $50 checks: voters were paid in exchange for casting their mail-in ballots in favor of Raia's slate and the rent control referendum. In short, the Government believes that "Raia instructed his campaign workers—including [1] Matthew Calicchio, [2] Michael Holmes, [3] Freddie Frazier, [4] Lizaida Camis, [5] Dio Braxton, and [6] Ana Cintron"—to bribe voters. Gov't Br. 3. Under the Government's version of events, Raia directed his campaign workers to collect and bring back unsealed mail-in ballots to his club in Hoboken so that he could verify whether each bribed voter cast his or her ballot as directed before having a $50 check issued to the voter from his PAC. To conceal the nature of the bribes, Raia created a cover story that each voter who received a $50 check did get-out-the-vote

-4-

work for Raia's campaign, and he made each voter sign a declaration to support that narrative.

On October 31, 2018, Raia and co-defendant Braxton were charged with one count of conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371, with the underlying offense being the use of the mails to facilitate any "unlawful activity" in violation of the Travel Act, 18 U.S.C. § 1952(a)(3). The Travel Act defines "unlawful activity" to include state bribery offenses. *See* § 1952(b)(2). Paying for votes is illegal bribery under New Jersey law. *See* N.J.S.A. §§ 2C:27-2(a) and 19:34-25(a).

By the time of Raia's trial in June 2019, most of his co-conspirators had reached agreements with the Government. Camis pleaded guilty, pursuant to a plea agreement, to a separate indictment on November 8, 2018. Calicchio pleaded guilty, pursuant to a plea agreement, to an information against him on May 7, 2019. Raia's co-defendant Braxton pleaded guilty, pursuant to a plea agreement, on May 30, 2019. Holmes, Frazier, and Cintron were not charged. Holmes and Frazier each entered into a non-prosecution agreement with the Government.

**B. Trial**

A jury trial was held before Judge Martini in the District of New Jersey. The Government called, among other witnesses, Calicchio, Holmes, and Frazier. Each testified that Raia directed himself and others, including the three non-testifying co-conspirators, to bribe voters.

Raia took the stand in his own defense. The gist of Raia's testimony, and overall defense theory, was that the campaign workers acted independently to bribe voters without any direction from Raia, and that the cooperating witnesses' testimony to the contrary were just lies told to stay on the good side of Government prosecutors. Under oath, Raia testified, among other things, that he "never bought a vote in [his] life" and that he did not instruct Camis, Cintron, or Braxton to bribe voters. App. 753; *see* App. 737–41.

The jury returned a verdict of guilty as to the one count of conspiracy charged and made no special findings.

**C. Sentencing**

Judge Martini held a sentencing hearing on December 2, 2019. We summarize the District Court's rulings on each enhancement the Government sought to apply before turning to the rulings on Raia's motion for a downward departure or variance.

*1. Aggravating Role Enhancement*

The Government, in accord with the Probation Office's recommendation in the Presentence Investigation Report, argued that a four-level aggravating enhancement under U.S.S.G. § 3B1.1(a) applied because Raia was an "organizer or leader" of the voter bribery scheme and the scheme involved five or more participants. The District Court stated that applying the four-level enhancement would be "extreme" and noted there was no testimony at trial that Raia ever imposed consequences on his campaign workers for not following his

-6-

directives to bribe voters.  App. 1092.  Raia had advanced this same "no consequences" theory in his sentencing memorandum, arguing that without any evidence of threatened consequences for disobedience he could not be an "organizer, leader, manager or supervisor" of another person, and thus *no* enhancement under § 3B1.1 was applicable.  *See* App. 1019–21 (citing *United States v. DeGovanni*, 104 F.3d 43, 45–46 (3d Cir. 1997)).

But the District Court declined to follow Raia's suggestion that no aggravating role enhancement applied.  Instead, it determined that the *two*-level aggravating role enhancement in subsection (c) "may be applicable" because Raia was the beneficiary of the conspiracy.  App. 1095; *see also* App. 1094 (positing that subsection (c) "at best . . . might apply").  The Court did not make any finding as to whether Raia was an "organizer, leader, manager, or supervisor" of the conspiracy.  Nor did it make an explicit finding as to the number of participants in the conspiracy.

### 2. Obstruction of Justice Enhancement

The Government also argued that a two-level obstruction of justice enhancement under § 3C1.1 applied because Raia committed perjury at trial.  "A defendant who testifies under oath at trial commits perjury within § 3C1.1 if he '[1] gives false testimony [2] concerning a material matter [3] with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'"  *United States v. Napolitan*, 762 F.3d 297, 312 (3d Cir. 2014) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)).  The Government maintained that Raia's testimony to the effect that he had

-7-

"[n]ever engaged in vote-buying or instructed particular campaign workers to bribe voters" was necessarily false because it was irreconcilable with the guilty verdict returned by the jury.[1]  App. 996, 1002–03 (Gov't sentencing memo.). Raia primarily contested the falsity element, positing that the jury could have convicted him while believing that he did not instruct his campaign workers to bribe voters.

The District Judge stated he was "not comfortable" with applying an obstruction of justice enhancement in Raia's case. App. 1096 (Sentencing Hr'g Tr. at 26:20–22).  He believed he was being asked to find Raia's testimony false based on the testimony of the cooperating witnesses—Holmes, Frazier, and Calicchio.  The Court expressed hesitancy in crediting the testimony of the cooperating witnesses because each had either received a non-prosecution agreement or lied during the course of the proceedings, and there was no other evidence clearly corroborating their testimony regarding the instruction of campaign workers.

The District Court ultimately declined to apply the obstruction of justice enhancement.  However, it did not make specific findings as to any of the elements of perjury—falsity, materiality, and willfulness.

---

[1] The Government also argued that Raia gave false testimony on two other points.  On appeal, the Government argues for the obstruction of justice enhancement based solely on Raia's testimony that he did not instruct his campaign workers to bribe voters.  *See* Gov't Br. 20–21.

*3. Downward Departure and Variance*

In his sentencing memorandum, Raia conceded that his base offense level was 12, which would result in a Guidelines range of 10–16 months' imprisonment. But he sought a downward variance—down to a non-custodial sentence—on account of both his medical needs and his history of community service. Raia also characterized these factors as justifications for a downward departure under U.S.S.G. §§ 5H1.4 (Physical Condition) and 5H1.11 (Charitable Service/Good Works). The Government opposed any reduction in Raia's sentencing exposure and asserted that Raia should be sentenced to 27 months' imprisonment—the bottom of his Guidelines range if the total offense level were 18.

The District Court stated that it would grant Raia's motion for a downward departure based on Raia's "extraordinary" charitable and public service that showed "true caring, more than [Judge Martini had] ever observed." App. 1083 (Sentencing Hr'g Tr. 13:7–13); *see also id.* at 1092 (Sentencing Hr'g Tr. 22:1–4) ("[A]n appropriate departure will be applied for that conduct."). The Court rejected Raia's motion for a departure based on his physical condition because Raia's health problems were neither extraordinary nor untreatable by the Bureau of Prisons.

Only after analyzing the applicability of the two enhancements *and* ruling on the departure motions did the District Court announce a total offense level under the Guidelines: 14. The District Court then expressly considered factors under 18 U.S.C. § 3553—including Raia's extraordinary community service, his physical condition, and

the need for general deterrence—and announced that "[f]or the record, I will vary down to a Level 8, Offense Level 8, which is a guideline of zero to six months." App. 1119 (Sentencing Hr'g Tr. 49:3–4). The Court then sentenced Raia to a three-month term of imprisonment with a one-year term of supervised release. This appeal followed.[2]

## II. ANALYSIS

The Government argues that the District Court erred in its calculation of Raia's Guidelines total offense level and sentencing range by declining to apply a four-level aggravating role enhancement and a two-level obstruction of justice enhancement. We review a district court's factual findings relevant to Guidelines enhancements for clear error and we exercise plenary review over a district court's interpretation of the Guidelines. *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc). We will address the applicability of each enhancement in turn. Raia, in the alternative, argues that any errors in the Guidelines calculation were harmless because it is highly likely that the District Court would impose the same sentence under the correct Guidelines range. We will address the harmless error issue after discussing the two enhancements.

### A. Aggravating Role Enhancement

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. The Government timely appealed Raia's sentence and the Solicitor General approved the prosecution of the appeal. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(b).

Section 3B1.1 of the Guidelines provides for an enhancement based on the role the defendant played in committing the offense. There are three possible offense-level increases depending on both the responsibility of the defendant and the scope of the criminal activity: (a) four levels if the defendant was an "organizer or leader" of the criminal activity and the crime involved five or more participants or was otherwise extensive; (b) three levels if the defendant was merely a "manager or supervisor" not rising to the level of "organizer or leader" and the crime involved five or more participants or was otherwise extensive; and (c) two levels if the defendant was any one of those roles but the criminal activity involved fewer than five participants and was not otherwise extensive. § 3B1.1(a)–(c). The Guidelines do not define "organizer," "leader," "manager," or "supervisor." Commentary to § 3B1.1 provides a non-exhaustive list of seven factors that a court should consider when distinguishing an organizer or leader from a manager or supervisor, including "the recruitment of accomplices," "the claimed right to a larger share of the fruits of the crime," "the degree of participation in planning or organizing the offense," and "the degree of control and authority exercised over others." *Id.*, App. Note 4; *see also United States v. Ortiz*, 878 F.2d 125, 127 & n.2 (3d Cir. 1989) ("The commentary to the guidelines of course is intended only to suggest various factors to be weighed.").

Here, the District Court applied a two-level enhancement under § 3B1.1(c) despite the uncontested fact that the voter bribery scheme involved five or more participants. This was error, as the text of the Guidelines makes plain. "A trial court's only options in cases involving a criminal activity with five or

-11-

more participants are . . . a four-level enhancement under § 3B1.1(a), a three-level enhancement under § 3B1.1(b), or no enhancement at all." *United States v. Kirkeby*, 11 F.3d 777, 778–79 (8th Cir. 1993). Raia concedes this error, arguing only that a one-level increase in the total offense level would be harmless error. *See* Oral Arg. Recording at 58:42–59:19. For reasons discussed *infra* Section II.C, we are not persuaded by Raia's arguments of harmless error. So we will vacate Raia's sentence and remand for resentencing.

Still, the Government seeks more than just a do-over. It asks that our remand include instructions that the District Court apply the four-level aggravating role enhancement under § 3B1.1(a). We decline to cabin the District Court's further consideration in that manner as it is not clear that "'the record permits only one resolution of the factual issue.'" *Bedrosian v. I.R.S.*, 912 F.3d 144, 152 (3d Cir. 2018) (quoting *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 n.3 (2008)).

For the aggravating role enhancement to apply, "the evidence must show that [the defendant] exercised some degree of control over at least one other person involved in the offense." *United States v. Fountain*, 792 F.3d 310, 321 (3d Cir. 2015) (citing *United States v. Helbling*, 209 F.3d 226, 243–44 (3d Cir. 2000)). But once it is established that the defendant exercised *some* degree of control over another, the sentencing court must still determine whether the defendant was merely a "manager or supervisor"—meriting a three-level enhancement where, as here, the criminal activity involved five or more participants—or was an "organizer or leader," meriting a four-level enhancement.

-12-

The record before us does not point to only one determination of Raia's role in the offense. This is unsurprising given that the inquiry into a defendant's role involves weighing numerous factors. Here, however, there was a dearth of findings by the District Court.[3] The District

[3] Oddly, both parties suggest that by imposing the two-level enhancement, the District Court implicitly found that Raia was a "manager or supervisor" but not an "organizer or leader." The application of the two-level enhancement does not support such an implicit finding because the enhancement applies to a defendant who was "an organizer, leader, manager, or supervisor" of a non-extensive criminal activity. § 3B1.1(c). The parties theorize, roughly, that the District Court must have found Raia to be a "manager or supervisor" but erroneously went "down" one level too far to the two-level enhancement, possibly because it viewed Raia as having exercised a small degree of control over others. But the District Court's references to control do not foreclose other possibilities. Perhaps the Court found Raia to be an "organizer or leader" on the balance of factors but (erroneously) applied only a two-level enhancement because the control factor was particularly weak. Or perhaps the Court thought Raia was not even a "manager or supervisor" (meriting no enhancement) because there was no "evidence that . . . he was the boss saying to people: You have to go do this," but applied a two-level enhancement because Raia was the beneficiary of the conspiracy (which would also be an error). App. 1094 (Sentencing Hr'g Tr. 23:17–18); *see id.* at 1095 ("[L]ook – he was the beneficiary of this conspiracy."). This indeterminacy prevents us from concluding that the District Court made an

-13-

Court did find that there was no "evidence that . . . [Raia] was the boss saying to people: You have to go do this"—a finding which the Government argues is contradicted by the jury verdict. App. 1094 (Sentencing Hr'g Tr. 23:17–18). But whether Raia issued instructions to campaign workers to bribe voters is not dispositive. Looking, for example, to some of the factors in the Guidelines commentary, there is no finding as to who recruited the co-conspirators into the voter bribery scheme, nor is there a finding as to Raia's degree of planning the scheme. It is true that "[t]here need not be evidence of every factor before a defendant is found to be a 'leader or organizer.'" *Ortiz*, 878 F.2d at 127. But the record here is not developed enough to enable us to determine that in the first instance.

On remand, the District Court should make explicit findings as to the number of participants in the criminal activity and whether Raia exercised some degree of control over another participant. The Court should then make a finding as to whether Raia was an "organizer or leader" or a mere "manager or supervisor" of the criminal activity, weighing all relevant factors as appropriate.

## B. Obstruction of Justice Enhancement

In *United States v. Dunnigan*, the Supreme Court held that whenever a defendant challenges the application of a § 3C1.1 enhancement based on perjured testimony, "the trial court must make findings to support all the elements of a perjury violation

implicit finding that Raia was a "manager or supervisor" but not an "organizer or leader."

-14-

in the specific case." 507 U.S. 87, 97 (1993). We have held that this *Dunnigan* rule is "not implicated when the enhancement is being rejected." *Napolitan*, 762 F.3d at 314. Nevertheless, a reasoned and rational justification is necessary to facilitate meaningful appellate review. *Id.* So, in *Napolitan* we exercised our supervisory power to hold that a district court must make the same explicit factual findings as to each element of perjury when the Government seeks to have the enhancement applied and the district court *declines* to apply it. 762 F.3d at 314–15.

Here, the District Court declined, over the Government's objection, to apply the enhancement under § 3C1.1. Yet, despite Raia's suggestion to the contrary, the District Court did not clearly express which elements of perjury the Government had failed to prove. While Raia is correct that the Court's discussion of the enhancement was longer than the single sentence at issue in *Napolitan*, 762 F.3d at 312 ("I don't know that the record supports it"), the Court did not even mention the specific elements of perjury. In declining to apply the obstruction of justice enhancement, it did indeed state that there was no email[4] "directly contradictory" to Raia's

---

[4] The Government makes much of the District Court's reference to a lack of corroborating evidence, claiming that the Court "imposed a corroboration requirement" not found in the Guidelines. Gov't Br. 24. We see no such imposition. While there is no requirement in § 3C1.1 that the falsity of a defendant's testimony be corroborated by documentary evidence or other testimony, the Court remained free to consider the existence of corroborating evidence in

-15-

testimony, which suggests that falsity was an unproven element. App. 1096. But it is not clear from the record that the Court declined to apply the enhancement because a preponderance of the evidence failed to show that Raia made false statements, or, instead, because it was "not comfortable" applying a two-level enhancement for policy reasons. App. 1096. (The latter would be a procedural error. *See Napolitan*, 762 F.3d at 312–13, 315 (holding the enhancement must be applied if the elements of perjury are satisfied notwithstanding policy concern regarding the right of a defendant to testify in his defense).)

Because the District Court did not make explicit findings as to the elements of perjury, we cannot fulfill our obligation to meaningfully review the determination of Raia's offense level under the Guidelines. This requires us to remand. And, as discussed *infra* Section II.C, a two-level miscalculation of the Guidelines offense level would not be a harmless error.

Here too, the Government seeks more than a remand for sufficient findings. It asks that we remand with instructions that the District Court apply the enhancement because all the elements of perjury are clear from the record. As an initial matter, this remedy would be unusual regardless of the record's clarity. The Government points us to no precedential case— nor could we find one—where our Court directed that an obstruction of justice enhancement be applied when the district court did not apply the enhancement. *See* Oral Arg. Recording at 6:11–7:13 (citing *United States v. Yaniro*, 303 F. App'x 100,

---

determining whether Raia's testimony was false by a preponderance of evidence.

103–04 (3d Cir. 2008) (not precedential) (affirming district court's application of the enhancement for perjury based on defendant's testimony at trial when district court erroneously applied enhancement for defendant's post-arrest statements)).

Substantively, the Government's argument for falsity relies entirely on the jury's guilty verdict. In evaluating whether a defendant's testimony is false, "'the sentencing court [is bound] to accept the facts necessarily implicit in the verdict.'" *Napolitan*, 762 F.3d at 315 (quoting *United States v. Boggi*, 74 F.3d 470, 479 (3d Cir. 1996)). The Government argues that the jury's guilty verdict implies that Raia instructed his campaign workers to bribe voters, so his testimony to the contrary was necessarily false.

"When a case involves a general verdict, establishing that the verdict necessarily determined any particular issue is extremely difficult." *United States v. Bailin*, 977 F.2d 270, 282 (7th Cir. 1992), *cited by United States v. McLaughlin*, 126 F.3d 130, 138 (3d Cir. 1997). Our cases affirming the application of the obstruction of justice enhancement for perjury based on facts implicit in a guilty verdict have involved testimony that all but stated an element of the offense. For example, in *United States v. Gray*, we affirmed the application of an enhancement for perjury when the defendant "repeatedly testified that he did not have a gun" but was convicted of unlawful possession of a firearm by a felon. 942 F.3d 627, 630, 632–33 (3d Cir. 2019). It is a logical implication that a defendant who testified that he did not possess something but who is then convicted of possession of that thing lied on the stand. *See also United States v. Johnson*, 302 F.3d 139, 144, 153–54 (3d Cir. 2002) (enhancement not clearly erroneous for defendant convicted of

-17-

possession with intent to distribute drugs when defendant testified that "none of the drugs found in his coat, in the taxi, and in the bags in [woman's] bedroom belonged to him"); *Boggi*, 74 F.3d at 479 (enhancement not clearly erroneous for defendant union representative convicted of, *inter alia*, unlawful receipt of money or thing of value by a union official in violation of 29 U.S.C. § 186 where defendant on the witness stand "deni[ed] acceptance or extortion of money and other things of value.").

But Raia was charged with conspiracy to commit voter bribery, not simple possession. The jury was instructed that the Government had to prove the existence of an agreement to achieve the object of the conspiracy, but that the agreement or mutual understanding could have been spoken or unspoken. App. 903. And the jury was instructed that the Government did not have to prove that Raia himself committed any overt acts to further the conspiracy. App. 906. In other words, the jury did not need to believe that Raia instructed his campaign workers to bribe voters in order to find him guilty of conspiracy. For example, the jury could have found Raia guilty of conspiracy for tacitly agreeing to further the conspiracy without telling the campaign workers to bribe voters.

The Government's rejoinder is that although the jury logically could have found Raia guilty without believing that he instructed campaign workers to bribe voters, neither the Government nor Raia asked the jury to so finely parse the evidence. Instead, the case was tried to the jury as a binary choice: believe either the Government's witnesses or Raia. So, since the jury found Raia guilty, it must have believed the

-18-

Government's account.  Yet a jury is always free to believe only part of a defendant's testimony.  *See, e.g.*, App. 913 (jury instructions) ("You may believe everything a witness says or only a part of it or none of it.").  A general verdict does "not disclose whether the jury rejected all or only part of [defendant's] testimony."  *McLaughlin*, 126 F.3d at 140 n.11.  Whether a fact is "necessarily implicit in the verdict" is a different inquiry from determining which facts the jury most likely believed.

Because the fact that Raia instructed his campaign workers to bribe voters is not necessarily implicit in the verdict, we cannot say that Raia's testimony was false.  We will not, therefore, direct the application of the obstruction of justice enhancement.[5]  On remand, the Government may attempt to prove by a preponderance of the evidence that Raia instructed campaign workers to bribe voters—or any other fact contrary to his testimony—with testimonial or documentary evidence.

**C. Harmless Error**

The District Court committed multiple errors in the calculation of the Guidelines offense level that normally warrant a remand for resentencing.  Yet Raia submits that any errors committed by the District Court are harmless in light of the three-month sentence imposed.  Procedural errors at sentencing—including miscalculations of the Guidelines—are

---

[5] Because we hold that the verdict here does not necessarily imply that Raia's testimony regarding instruction of campaign workers was false, we do not address the parties' arguments as to willfulness.

indeed subject to harmless error review. *See United States v. Zabielski*, 711 F.3d 381, 386 (3d Cir. 2013). "In the context of a Guidelines calculation error," harmless error "means that the record must demonstrate that there is a high probability 'that the sentencing judge would have imposed the same sentence under a correct Guidelines range, that is, that the sentencing Guidelines range did not affect the sentence actually imposed.'" *Id.* at 387 (quoting *United States v. Langford*, 516 F.3d 205, 216 (3d Cir. 2008)). "'High probability' requires that the court possess a 'sure conviction'" that the sentence would be the same, not merely an assumption that "'places us in the zone of speculation and conjecture.'" *Langford*, 516 F.3d at 215 (quoting *United States v. Zehrbach*, 47 F.3d 1252, 1265 (3d Cir. 1995)), 218 (quoting *United States v. Conlan*, 500 F.3d 1167, 1170 (10th Cir. 2007)).

The proponent of maintaining the sentence—here, Raia—has the burden of persuading a court on appeal that the district court would have imposed the same sentence under the correct Guidelines range. *See United States v. Smalley*, 517 F.3d 208, 212 (3d Cir. 2008). It is a "*rare case* where we can be sure that an erroneous Guidelines calculation did not affect the sentencing process and the sentence ultimately imposed." *Langford*, 516 F.3d at 219 (emphasis added). Our Court has emphasized two ways a party might meet its heavy burden and fall into the "rare case" category.

First, we may be sure that a Guidelines miscalculation is harmless where the district court explicitly states that it would have imposed the same sentence even under the correct Guidelines range. *Cf. Zabielski*, 711 F.3d at 387–88 ("[I]t will usually be difficult for an appellate court to conclude with

sufficient confidence that the same sentence would have been imposed absent a clear statement to that effect by the sentencing judge."); *Molina-Martinez v. United States*, 136 S. Ct. 1138, 1347 (2016) ("Where, however, the record is silent as to what the district court might have done had it considered the correct Guidelines range, the court's reliance on an incorrect range in most instances will suffice to show an effect on the defendant's substantial rights."). However, even an explicit statement that the same sentence would be imposed under a different Guidelines range is insufficient if that alternative sentence is not also a product of the entire three-step sentencing process. *See Smalley*, 517 F.3d at 215; *United States v. Wright*, 642 F.3d 148, 154 n.6 (3d Cir. 2011) (vacating and remanding for resentencing when district court's statement in the alternative did not explain why upward departure or variance that would have resulted in same sentence was merited); *United States v. Hester*, 910 F.3d 78, 91–92 (3d Cir. 2018) (vacating and remanding for resentencing despite "explicit statement [from the district court] that it intended to rectify a likely Guidelines miscalculation when imposing the sentence").

Second, we have held a Guidelines miscalculation to be harmless where the district court "chose to disregard the Guidelines as too severe in such a way that we can be certain that the miscalculation had no effect on the sentence imposed." *Langford*, 516 F.3d at 218 (cleaned up); *see also Zabielski*, 711 F.3d at 389 (holding error was harmless on these grounds). Of course, we cannot be sure that a Guidelines error is harmless simply because the sentence imposed is the result of a variance outside both the correct and incorrect Guidelines ranges. *See*

*United States v. Welshans*, 892 F.3d 566, 573 (3d Cir. 2018) (no harmless error where improper application of enhancement increased offense level from 37 to 39, yet district court imposed sentence after varying downward to offense level 34); *United States v. Douglas*, 885 F.3d 124, 136 (3d Cir. 2018) (en banc) (remanding for resentencing where improper application of enhancement increased Guidelines range from 360 months to life imprisonment (level 42) to life imprisonment (level 43), yet district court varied downward to impose sentence of 240 months). In *Zabielski*, one of the rare cases where we determined that an erroneous calculation was harmless, we stressed that "what is most important is that the sentencing judge understands the facts . . . and incorporates them into a just sentence" and that it was the "District Court's detailed findings of fact and explanation" that convinced us that the same sentence would be imposed on remand. 711 F.3d at 388.

Raia does not attempt to satisfy his burden under the first rationale because the District Court provided no explicit statement that it would have sentenced Raia to three months' imprisonment regardless of the offense level. Instead, Raia relies on the second rationale and argues that the departures and variances that the District Court employed to reach offense level 8 were completely disconnected from the Guidelines range calculation. In other words, the Guidelines did not inform the District Court's sentence at all because the Court deemed them to be too punitive. Raia cannot satisfy his burden under this second rationale either.

The first obstacle Raia faces is that the District Court did not follow the post-*Booker* three-step sentencing process, which requires the sentencing court to calculate, at step one, a

-22-

Guidelines offense level or range inclusive of any enhancements before, at step two, stating on the record how much any departure affected the offense level or range. *See, e.g.*, *United States v. Fumo*, 655 F.3d 288, 308–09 (3d Cir. 2011) (citing *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006)). The District Court's elision of the two steps leaves us uncertain as to the extent to which the Court either departed or varied. After stating that it would apply a departure for Raia's charitable works, the District Court announced an offense level of 14—consistent with a base offense level of 12 plus a two-level enhancement under § 3B1.1(c) plus no enhancement for obstruction of justice and *no* departures. The next offense level the Court announced was offense level 8, which the Court reached after "vary[ing] down." App. 1119. This chain of events admits at least three interpretations: 1) there was no departure—or an erroneous departure of zero offense levels—despite the District Court's statement that it would apply one; 2) there was no variance because the Court misspoke when announcing an offense level of 8; or 3) there was a downward departure of an unknown, non-zero number of levels applied to the offense level from which the Court then varied downward to level 8. These various possibilities make it far from certain, if not improbable, that the Court would reach the same total offense level were either enhancement applied.

The second obstacle confronting Raia is that the District Court did not provide "detailed findings of fact and explanation" in its analysis of the Guidelines. With respect to the aggravating role enhancement, for example, the Court did not demonstrate that it understood all the factors supporting

-23-

and cutting against finding Raia to be an organizer, leader, manager, or supervisor. Thus, unlike the variance applied in *Zabielski*, we cannot tell if the District Court "grasp[ed] the[] significance" of these factors and imposed the three-month sentence regardless of the Guidelines enhancements. 711 F.3d at 388.

Finally, Raia points to the compassionate release he obtained during the pendency of this appeal as evidence that the District Court is highly likely to impose the same sentence on remand. On May 7, 2020, Judge Martini granted Raia's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and allowed Raia to serve the remainder of his sentence under home confinement (but did not reduce the length of Raia's sentence). *See* Order, *United States v. Raia*, No. 2:18-cr-00657-WJM (D.N.J. May 7, 2020), ECF No. 91. But the question before the Court on the compassionate release motion—i.e, whether Raia's sentence should be reduced because of extraordinary and compelling reasons—did not go to the reasons that Raia was sentenced in the first place.

Because there are no detailed findings of fact to review nor an explanation as to how the District Court reached the sentence it imposed, we do not regard this as the "rare case where we can be sure that an erroneous Guidelines calculation did not affect the sentencing process and the sentence ultimately imposed." *Langford*, 516 F.3d at 219. Thus, the error was not harmless and we will remand so the District Court may correct the procedural errors involving the two enhancements.

### III. CONCLUSION

-24-

The District Court made multiple errors in its interpretation of the Guidelines that affect the calculation of Raia's offense level. Raia has not met his heavy burden to show that these errors are harmless. We will vacate Raia's sentence and remand to the Court for resentencing.

On remand, it should proceed under the three-step post-*Booker* sentencing process, applying any enhancements before ruling on motions for departure. In deciding whether to apply the aggravating role enhancement, the Court should make explicit findings as to the number of participants in the criminal activity, whether Raia exercised some degree of control over another participant, and whether he was a "manager or supervisor" or "organizer or leader." In deciding whether to apply the obstruction of justice enhancement for perjury, the Court must "either make findings to support all the elements of a perjury violation, or clearly express which elements it believes have not been proven." *Napolitan*, 762 F.3d at 315.