**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2795
_____

UNITED STATES OF AMERICA

v.

SALIM DAVIS,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-18-cr-00270-001)
District Judge:  Honorable Gene E. K. Pratter
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 19, 2022
_____

Before:  CHAGARES, <u>Chief</u> <u>Judge</u>, McKEE, and PORTER, <u>Circuit</u> <u>Judges</u>.

(Filed: October 14, 2022)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**CHAGARES**, Chief Judge.

A jury found Salim Davis guilty of four counts relating to the possession of a firearm and the distribution of controlled substances. Davis raises several issues on appeal challenging his conviction and sentence. For the following reasons, we will affirm the judgment of the District Court.

I.

We write primarily for the parties and recite only the facts essential to our decision. Philadelphia Police Inspector Verdell Johnson testified that on December 29, 2017, he was off duty in an unmarked car and exited his car to move a trash bag blocking the road. While he was outside of his car, he heard a "loud boom" followed by a "couple other booms." Appendix ("App.") 124. Johnson saw Davis and another man, each pointing a black handgun toward Theodore Street. Johnson was about 25 to 30 feet away from the men. He testified that "[t]here was no one else on the street." App. 547. Johnson got back into his car and radioed for backup. While waiting for backup, Johnson slowly followed Davis and the other man.

Johnson eventually exited his vehicle, drew his gun, and identified himself as a police officer. Two other officers (Officer Brown and Officer Wells) arrived. Davis discarded his jacket, and Officer Wells placed Davis in handcuffs. Officer Wells conducted a pat down of Davis and felt "a large bulge in his right pants pocket." App. 625. He removed the object and found a "standard prescription tinted pill bottle" that "didn't have any kind of labeling on it." Id. The pills inside the bottle were stuffed inside plastic wrap. He also recovered over one thousand dollars in cash from the same pant

2

pocket. Officer Wells noticed a locket around Davis' neck about the size of a watch that "rattled when it moved." App. 627. Wells removed the locket, opened it, and found more pills. App. 218. Officer Brown found a black and silver Smith & Wesson handgun in the pocket of Davis' discarded jacket.

An indictment charged Davis with four counts: (1) aiding and abetting the making of a false statement to a federal firearms licensee; (2) being a felon in possession of a firearm; (3) possession of Xanax with intent to distribute; and (4) possession of a firearm in furtherance of a drug trafficking crime. Davis proceeded to trial.

In addition to the officers, the Government called Basiyr Kelly as a witness. Kelly testified that he bought a car from Davis in February 2017 and that he owed Davis approximately $400 at the time the events of this case unfolded. He testified that, to make up for the debt, Davis asked Kelly to "get a gun for him." App. 782. Kelly explained that he met up with Davis at a gun shop and purchased a .40 caliber Smith & Wesson for Davis. Kelly filled out the forms to purchase the firearm and identified himself as the buyer.

On cross and recross examination, the defense questioned Kelly about a Springfield XD gun, a different firearm than the one at issue at the trial. The defense specifically asked Kelly whether he received a Springfield XD gun from a man named Jonathan Shannon and whether Kelly had then asked Davis whether he knew anybody interested in purchasing the gun. Kelly denied that he had. The defense then questioned Special Agent Justin Hines about Kelly's testimony. Agent Hines testified that Kelly had

3

in fact purchased a Springfield XD gun from someone named Jonathan Shannon and had contacted Davis to see if Davis knew anyone interested in purchasing that gun.

A jury found Davis guilty on all counts. Davis moved for acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, as well as a new trial pursuant to Rule 33. The District Court denied both motions and sentenced Davis to 100 months of imprisonment. In calculating the sentence, the District Court applied a four-level sentencing enhancement under the United States Sentencing Commission Guidelines Manual (the "Guidelines" or "U.S.S.G.") § 2K2.1(b)(6)(B), which applies if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." Id. The court applied the enhancement based on Davis' alleged commission of a Pennsylvania state law offense of recklessly endangering another person. Davis timely appealed.

## II.[1]

### A.

Davis contends that the Government failed to correct false testimony from Kelly. "We review for clear error a trial court's factual finding that a witness's testimony was not false and we will not disturb that finding unless it is wholly unsupported by the evidence." United States v. Hoffecker, 530 F.3d 137, 183 (3d Cir. 2008). A witness commits perjury if he "gives false testimony concerning a material matter with the willful

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993).

Davis points to several portions of Kelly's testimony that he claims are perjurious, including Kelly's denial that he received a gun from Shannon and contacted Davis about that gun. The District Court held that, while confusing, Kelly's testimony was not perjurious. The court did not clearly err in so holding. In the portions of his testimony that Davis claims were false, Kelly seemed confused about whether the defense's questions refer to the Springfield XD gun or the Smith & Wesson gun. For example, when the defense asked Kelly whether he contacted Davis to ask if Davis "knew anybody who might be interested in purchasing a firearm," Kelly responded, "[h]e reached out to me . . . [t]hat's how he got the gun. I owed him. So me getting the gun was supposed to pay off my debts." App. 859. While the defense's question appears to refer to the Springfield XD gun, Kelly's response refers to the Smith & Wesson gun. And when the defense asked Kelly about whether he lied to investigators about a transaction with Shannon, Kelly stated, "I basically lied to them how [sic] I got the gun for him." App. 834. When the defense clarified whether Kelly meant the gun for Shannon, Kelly responded, "[n]o, for Salim Davis." App. 834. We therefore hold that the District Court did not clearly err in holding that Kelly did not commit perjury.[2]

---

[2] Davis also argues that the evidence presented at trial was insufficient to support his conviction of aiding and abetting the making a false statement to a federal firearms licensee, which he contends was based entirely on Kelly's testimony. Because we hold that the District Court did not clearly err in concluding that Kelly's testimony was not false, we also hold that there was sufficient evidence to support Davis' conviction on this count.

5

B.

Davis argues that the evidence at trial was insufficient to support several of his convictions. When reviewing challenges to the sufficiency of evidence, we "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt." United States v. Caraballo-Rodriguez, 726 F.3d 418, 430 (3d Cir. 2013) (en banc) (cleaned up). We review de novo a District Court's denial of a Rule 29 motion and apply the same standard as the District Court. Id. at 424.

1.

Davis argues that the evidence presented at trial was insufficient to support his conviction of possession of Xanax with intent to distribute because the Government presented no evidence that Davis dealt Xanax. Davis instead argues that he possessed Xanax for personal use.

Viewing the record in the light most favorable to the Government, sufficient evidence supported a conviction on this count. The Government presented a host of circumstantial evidence to support Davis' intent to distribute Xanax. See United States v. Mercado, 610 F.3d 841, 845 (3d Cir. 2010). For example, Davis tested negative for Xanax nine times in 2017. Special Agent Gerard Gobin also testified that, in his experience, the division of pills between the label-free bottle and the locket, the pills wrapped in plastic, the presence of a firearm, and the cash all supported the inference that Davis possessed the Xanax for distribution. Gobin further testified that the pills were slightly different shapes and sizes, which indicated to him that they came from "more

6

than one source and more than one location." App. 987–88. Based on this circumstantial evidence, a rational jury could find that Davis intended to distribute Xanax.

2.

Davis next argues that the evidence presented at trial was insufficient to support his conviction of possession of a firearm in furtherance of a drug-trafficking crime. To convict Davis of this count, the Government was required to prove: (1) that he committed a predicate drug-trafficking crime; (2) that he knowingly possessed a firearm; and (3) that he did so in furtherance of the predicate drug-trafficking crime. See United States v. Bailey, 840 F.3d 99, 112 (3d Cir. 2016). Davis contends that the Government failed to present evidence to support the "in-furtherance" element. The following nonexclusive factors are relevant to the "in-furtherance" determination:

> the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

United States v. Sparrow, 371 F.3d 851, 853 (3d Cir. 2004).

Given the factors the jury may consider in assessing the "in-furtherance" element, there was sufficient evidence to support the conviction. The gun was found in Davis' jacket pocket, making it very accessible. Drugs and cash were also found on his person. And the gun was found after Officer Johnson heard shots and saw Davis holding a gun. This provides more than enough evidence for the "in-furtherance" element, and we therefore hold that the evidence was sufficient to support a conviction on this count.

7

C.

Davis argues that the Government exercised its peremptory challenges in violation of Batson v. Kentucky, 476 U.S. 79 (1986) by striking a juror who appeared to be Latino. We review Batson claims for clear error.[3] See Flowers v. Mississippi, 139 S. Ct. 2228, 2235 (2019). A Batson challenge requires a three-step inquiry, the first of which is whether the defendant made a prima facie showing that a peremptory challenge was exercised on the basis of race. United States v. Savage, 970 F.3d 217, 266 (3d Cir. 2020). The relevant factors for the first step are: "(1) the number of racial group members in the panel, (2) the nature of the crime, (3) the race of the defendant and the victim, (4) a pattern of strikes against racial group members, and (5) the prosecution's questions and statements during the voir dire." Lewis v. Horn, 581 F.3d 92, 103 (3d Cir. 2009).

The factors for the first step of Batson weigh against Davis. The nature of the crimes here have no racial component, and the defense does not allege a pattern of strikes against racial group members. See Bronshtein v. Horn, 404 F.3d 700, 724 (3d Cir. 2005). And the prosecutor did not ask questions during the voir dire that suggest that the strike was because the juror appeared to be Latino. The District Court therefore did not err in rejecting Davis' Batson claim.

---

[3] The Government argues that Davis's Batson challenge was untimely and that, as a result, plain error review applies. It is unnecessary for us to reach this issue because we will affirm the District Court's ruling under the clear error standard.

D.

Davis argues that the District Court erred in applying a four-level enhancement based upon his alleged commission of a Pennsylvania state law offense of recklessly endangering another person. "We review a district court's factual findings relevant to Guidelines enhancements for clear error." United States v. Raia, 993 F.3d 185, 191 (3d Cir. 2021). "[T]he proper application of the four-level enhancement under U.S.S.G. § 2K2.1(b)(6) requires finding, by a preponderance of the evidence that the defendant committed another felony offense." United States v. Hester, 910 F.3d 78, 88 (3d Cir. 2018) (cleaned up). The enhancement applies "regardless of whether a criminal charge was brought, or a conviction obtained" for another felony. U.S.S.G. § 2K2.1, cmt. n.14(C).

The District Court found that Davis violated 18 Pa. Cons. Stat. Ann. § 2705 in applying the four-level enhancement. To prove that Davis violated this statute, the Government had to prove by a preponderance of the evidence that Davis "(1) possessed a mens rea recklessness, (2) committed a wrongful deed or guilty act[,] and (3) created by such wrongful deed the danger of death or serious bodily injury to another person." Commonwealth v. Emler, 903 A.2d 1273, 1278 (Pa. Super. 2006) (cleaned up).

While the "mere act of discharging a firearm does not on its own constitute recklessly endangering another person," Pennsylvania courts have upheld a conviction for reckless endangerment where the defendant "fired a handgun into his porch ceiling with a witness mere feet away." Commonwealth v. Shaw, 203 A.3d 281, 284 (Pa. Super. 2019). Here, there was a preponderance of the evidence that Davis fired a gun toward a

9

city street with his co-defendant standing next to him. We therefore hold that the District Court did not clearly err in applying the enhancement.[4]

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[4] Davis also moved to suppress the pill bottle, cash, and locket. A review of a district court's denial of a motion to suppress is for clear error as to findings of fact and plenary as to legal determinations regarding the denial of the motion. United States v. Williams, 974 F.3d 320, 350 (3d Cir. 2020). The officers had probable cause to arrest Davis after Officer Johnson heard gunshots and witnessed Davis holding a gun. See Wright v. City of Philadelphia, 409 F.3d 595, 601 (3d Cir. 2005). Given that the arrest was valid, Officer Wells' search of Davis' person was a valid search incident to arrest. See United States v. Robinson, 414 U.S. 218, 235 (1973); United States v. Shakir, 616 F.3d 315, 317 (3d Cir. 2010) ("The permissible scope of a search incident to arrest includes the arrestee's person . . . construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." (cleaned up)). We will therefore affirm the District Court's denial of Davis' motion to suppress.