NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-1375
_____

UNITED STATES OF AMERICA

v.

FURAD LOYAL,
a/k/a Kiko,
                    Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 2:23-cr-00334-001)
District Judge: Honorable Susan D. Wigenton
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on February 7, 2025

Before: RESTREPO, MONTGOMERY-REEVES, SCIRICA, *Circuit Judges.*

(Filed: March 13, 2025)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SCIRICA, *Circuit Judge*

Defendant Furad Loyal appeals his conviction, raising two claims of trial error and one claim of sentencing error. We disagree and will affirm.

I.

Loyal participated in a drug-trafficking organization ("DTO") that operated largely out of an apartment complex in Newark, New Jersey, and distributed heroin and other narcotics. On November 21, 2017, local law enforcement and the FBI raided the complex and found Loyal hidden in an apartment belonging to Adrienne Perry. Perry routinely allowed DTO members use of her apartment to stash drugs and other items in exchange for heroin and cash.

During the raid, police searched Perry's apartment without a warrant, arrested Loyal, and seized 100 grams of heroin, over $10,000 in cash, and a firearm belonging to Loyal. The parties dispute whether Perry voluntarily consented to the search but agree a Newark police officer knocked on Perry's door, which Perry opened just enough to see the officer and converse with him. The officer testified he then asked Perry if anyone else was inside the unit, and Perry nodded affirmatively but said "no." According to Perry's testimony, the officer asked her if he could enter the unit, to which she said "no," and the officer stuck his foot in the door as she was shutting it. Perry then testified she and the officer continued speaking, and the officer asked again if he could enter, to which she assented. Contrary to Perry's testimony, Loyal claims the officer forced the door open. Either way, Perry gave her written consent to the search once the officer and his partner entered.

2

The government subsequently indicted Loyal on four counts: Conspiracy to Distribute and Possess with Intent to Distribute Heroin from November 2016 through March 5, 2018 (Count One); Possession with Intent to Distribute Heroin on or about November 21, 2017 (Count Two); Possession of a Firearm by a Convicted Felon on or about November 21, 2017 (Count Three); and Possession of a Firearm in Furtherance of a Drug Trafficking Crime on or about November 21, 2017 (Count Four).

Loyal moved to suppress the firearm, drugs, and cash recovered from Perry's apartment. The District Court denied the motion without a hearing, holding Loyal's affidavit failed to establish Fourth Amendment standing in Perry's apartment, or alternatively that Perry had consented to the search. Later, the government produced Jencks material showing Loyal and Perry had the aforementioned transactional relationship whereby he used her apartment in exchange for drugs and cash. Arguing this information supported his Fourth Amendment standing to challenge the search of Perry's apartment, Loyal moved for reconsideration of his suppression motion. The District Court denied the motion.

After a weeklong jury trial, Loyal was convicted of Counts One, Two, and Three and acquitted of Count Four. The District Court denied Loyal's subsequent motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29(c). At sentencing, the Probation Office recommended a Base Offense Level of 32 on the basis that Loyal distributed at least three kilograms, but less than ten kilograms, of heroin—the Office conservatively estimated Loyal had distributed at least seven kilograms of heroin. Loyal objected to the estimate, but the District Court found that, if Loyal entered the conspiracy

3

in August 2017, the evidence derived from Loyal's communications with DTO members established he distributed at least three kilograms by the time of his arrest. Accordingly, the District Court agreed with the Probation Office's Base Offense Level of 32—as well as two two-level enhancements for possession of a dangerous weapon and maintaining a drug premises—but rejected a proposed three-level aggravating role enhancement. Applying the Final Offense Level of 36 and Criminal History Category II, the court sentenced Loyal to 210 months—the bottom of the Guidelines range—for Count One, to run concurrently with 120-month sentences for Counts Two and Three. Loyal timely noticed this appeal.

## II.[1]

Loyal contends the District Court erred by (1) denying, without a hearing, his motion to suppress the evidence seized at Perry's apartment; (2) convicting him of Count One on legally insufficient evidence; and (3) applying a Base Offense Level of 32 at sentencing under U.S.S.G. §§ 2D1.1(a)(5), (c), upon determining he distributed at least three kilograms of heroin. We reject each of these arguments.

*First*, because Loyal lacks Fourth Amendment standing to contest the officers' search of Perry's apartment, the District Court correctly denied his motion to suppress.[2]

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We note the applicable standards of review with regard to each claim below.

[2] We "review the district court's denial of the motion to suppress for clear error as to the underlying facts, but exercise plenary review as to its legality in light of the court's properly found facts." *United States v. Riddick*, 156 F.3d 505, 509 (3d Cir. 1998) (citations omitted) (cleaned up). When reviewing a motion to suppress, we may probe the entire trial record. *United States v. Silveus*, 542 F.3d 993, 1001 (3d Cir. 2008).

4

Defendants lack an objectively reasonable expectation of privacy in—and thus standing to move to suppress items seized from—property where they are "obviously not overnight guests, but [are] essentially present for a business transaction." *Minnesota v. Carter*, 525 U.S. 83, 90 (1998). Here, Loyal "[c]learly . . . [was] not an overnight guest" in Perry's apartment, as the District Court found, Supp. App. 102-03, but is more akin to the defendants in *United States v. Perez*, 280 F.3d 318 (3d Cir. 2002). There, we held defendants lacked a reasonable expectation of privacy in an apartment where they were present "for [no] purpose other than to engage in drug-related activities." *Id.* at 338. Loyal's averments on appeal that (1) he used Perry's apartment "from 5:30 in the morning until 11:00 pm in the evening," (2) "Perry had given . . . Loyal the keys to the apartment," and (3) he paid to use the apartment, App. Br. 10, all cut against him: they reveal the sole purpose of Loyal's use of Perry's apartment was to conduct extensive "drug-related activities." *Perez*, 280 F.3d at 338. As in *Perez*, where the search took place in a kingpin's apartment defendants did not stay in as overnight guests and used only for drug storage and distribution, *id.* at 323-25, Loyal and his coconspirators used Perry's apartment exclusively for DTO business—a "purely commercial" relationship, *Carter*, 525 U.S. at 84.[3]

---

[3] Even if we were to conclude Loyal has standing to challenge the search, we would confront Perry's explicit consent to the search. Although the competing trial testimonies reveal a dispute of material fact on whether the officer stuck his foot in the door to reiterate his request to enter or, as Loyal claims, to force his way into the apartment, the record also reveals Perry gave her verbal and written consent to the search upon the officer's second request for entry. Accordingly, we discern no clear error in the District Court's conclusion that Perry's consent to the search was freely and voluntarily

Furthermore, the District Court did not abuse its discretion in opting not to hold an evidentiary hearing on Loyal's motion to suppress.[4]  Although we find Loyal raised several colorable constitutional claims in his motion,[5] he did not meet his burden of raising "disputed issues of material fact" that would "establish an *essential* element of his . . . claim that evidence was obtained unconstitutionally" and would "affect the outcome of the motion to suppress," thereby mandating a hearing.[6]  *United States v. Hines*, 628 F.3d 101, 106-07 (3d Cir. 2010) (emphasis added) (internal quotation marks and citation omitted), *overruled on other grounds*, *Alleyne v. United States*, 570 U.S. 99 (2013).

---

given.  *See United States v. Givan*, 320 F.3d 452, 459 (3d Cir. 2003) ("[V]oluntariness 'is a question of fact to be determined from the totality of all of the circumstances' . . . . [and is] subject to review on a clear error basis." (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 227 (1973))).

[4] We review denial of an evidentiary hearing on a motion to suppress for abuse of discretion, but we review the District Court's factual findings for clear error and its application of law to those facts de novo.  *United States v. Davis*, 726 F.3d 434, 439 (3d Cir. 2013).

[5] Specifically, Loyal contends (1) the officer's warrantless entry into Perry's apartment was not based on probable cause, exigent circumstances, or consent; (2) the officers lacked probable cause for arresting Loyal in the apartment; and (3) Perry's purported consent to the search was involuntary.  In his opening brief, it seems Loyal continues to press primarily the third claim.

[6] In his motion to suppress, Loyal merely (1) contends the voluntariness of Perry's consent should be evaluated under a totality of the circumstances test; (2) claims the alleged presence of "seven officers in the apartment . . . . [was an] explicit demonstration of force . . . [that] render[ed] any voluntary consent specious," Supp. App. 31; and (3) states vaguely in his brief affirmation that the officer put his foot in Perry's door and "demanded entry," Supp. App. 44.  Subsequently, in his motion for reconsideration, Loyal states the *Jencks* material reveals the transactional relationship between himself and Perry.  Without more, Loyal's submissions to the District Court fell short of "submitting evidence that, if true, would tend to establish an *essential* element of his or her claim that evidence was obtained unconstitutionally."  *Hines*, 628 F.3d at 106 (emphasis added).

6

*Second*, Loyal challenges his conviction of Count One, arguing the government lacked sufficient evidence to prove the conspiracy involved an agreement to distribute at least one kilogram of heroin.  Our review of the sufficiency of the evidence is plenary; we apply the same "highly deferential" standard as the District Court in assessing the jury's determination on sufficiency of the evidence—we must uphold the jury's conclusion unless it is "irrational."  *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 424, 430-31 (3d Cir. 2013) (en banc).  We fail to identify from Loyal's briefing or the record anything supporting limiting, as he suggests, the time period for calculating aggregate drug quantities to between October 24, 2017 (when he contends he allegedly joined the conspiracy), and November 21, 2017 (when he was arrested).  Rather, given ample support in the record for the proposition that Loyal joined the DTO in August 2017, the jury was at least "rational" in reaching that conclusion.  And even if we accept November 21, 2017, as the date on which Loyal withdrew from the conspiracy (the government contends he actually withdrew on March 5, 2018), and we apply the most conservative estimate of the quantity of drugs the DTO distributed (50 grams daily), the total would be 4.9 kilograms—well above the statutory threshold for conviction.  *See* 21 U.S.C. § 841(b)(1)(A)(i).  Because, in "drug conspiracy cases[,] . . . we [do not] examine[] sufficiency by looking at the evidence under a microscope," *Caraballo-Rodriguez*, 726 F.3d at 430, we will not upset the jury's quantity findings.[7]

---

[7] The same goes for the jury's finding Loyal participated in a conspiracy, rather than a buyer-seller relationship with one of his alleged coconspirators.  As the Government notes, the jury relied on a wide range of evidence in concluding Loyal distributed narcotics on credit, thereby engaging in a drug distribution conspiracy.  *See*

7

*Third*, Loyal challenges his Base Offense Level of 32, which is based on the District Court's determination under U.S.S.G. §§ 2D1.1(a)(5), (c), that the drug distribution covered by Counts One and Two involved at least three kilograms of heroin.[8] For reasons stated in the preceding paragraph, the jury's determination that Loyal joined the conspiracy in August 2017 was not clear error. Using this start date, then, the District Court found Loyal was responsible for at least three and up to seven kilograms of heroin distribution. Because that finding is supported by the record—*i.e.*, trial testimonies revealing the typical and minimum quantities of drugs distributed by the DTO on daily and weekly bases—we conclude the government met its burden. *See United States v. Duliga*, 204 F.3d 97, 101 n.2 (3d Cir. 2000) (reasoning a district court need not "undertake a searching and individualized inquiry" before establishing an estimate necessary to a sentencing calculation, so long as its estimate is "firmly supported by the record"). Accordingly, Loyal has not shown clear error in the sentence.[9]

## III.

For the foregoing reasons, we will affirm the District Court's judgment.

---

*United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008) ("[Informant] testified that [defendant] gave him drugs on credit . . . . This arrangement is sufficient evidence of a conspiracy." (citation omitted)). We must defer to that finding.

[8] We review a sentencing court's factual determination with respect to a drug quantity for clear error. *United States v. Diaz*, 951 F.3d 148, 159 (3d Cir. 2020). The government bears the burden of proving drug quantity by a preponderance of the evidence. *United States v. Paulino*, 996 F.2d 1541, 1545 (3d Cir. 1993).

[9] In any case, the sentencing court expressly stated it would have imposed the same sentence even if all enhancements were omitted, making any purported sentencing error here is non-prejudicial. *See United States v. Raia*, 993 F.3d 185, 195 (3d Cir. 2021) ("[A] Guidelines miscalculation is harmless where the district court explicitly states that it would have imposed the same sentence even under the correct Guidelines range.").